## GRANT STANLEY v. UNITED STATES.

*[Opinion Filed July 20, 1893.]*

1.  FEDERAL CAUSES—*Practice*.—In matters of practice in Federal criminal causes, the code of criminal procedure of the Territory governs, so far as the same is applicable and not in conflict with some Federal stat- te on the same subject.

2.  CHANGE OF VENUE—*From Judge.*—There is no provision in the criminal procedure act authorizing the venue to be changed from one county to another, in a criminal cause, on account of the bias or prejudice of the presiding judge.

3.  ORGANIC ACT—*Assignment of Judges*.—The organic act, § 9, provides, that the Supreme Court of the Territory shall consist of a Chief Justice and two Associate Justices, and that said Territory shall be divided into three Judicial districts, and a district court shall be held in each county in said district by one of the Justices of the Supreme Court, at such place and time as may be prescribed by law, and each Judge, after assignment, shall reside in the district to which he is assigned; and that the Supreme Court shall define said judicial districts, and shall fix the times and places, at each county-seat, in each district where court shall be held, and designate the Judge who shall preside therein. *Held*, that, after the order of assignment, the Judge is required to reside in the district to which he is assigned, and is vested with no judicial power, as a district Judge, outside of his district, and the legislature has no power to confer it on him.

4.  DISTRICT COURTS—*Powers of Judges*.—The district courts are creatures of the Federal Congress, and derive their powers and authority from the laws of the United States; and the act of the legislature giving one Judge power to call another from his district, and requiring him to go into another district on the order of the presiding Judge, as contemplated in the code of criminal procedure, is not in harmony with the laws of Congress, and is void.

5.  INDICTMENT—*When Set Aside*.—An indictment may be set aside by the court on the motion of the defendant, *first*, when it is not found, indorsed, presented or filed as prescribed by the criminal procedure-

act; *second*, when the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment, or indorsed thereon;*third*, when a person is permitted to be present during the session of the grand jury, while a vote on the finding is being taken. A motio i to quash the indictment cannot be entertained for any of the causes for which an indictment may be set aside, and there is no error in over-ruling such motion.

6. INDICTMENT—*Plea in Abatement.*—Irregularities in selecting and im-panelling the grand jury cannot be attacked by plea in abatement. The criminal code of procedure makes ample provision for taking ad-vantage of all irregularities in the selection of the grand jury by a challenge at the proper time; and this procedure governs in the trial of Federal cases, and is the only manner in which the panel of the grand jury may be attacked.

7. INDICTMENT FOR PERJURY—*Sufficiency.*—The indictment alleged that the defendant was sworn as a witness in a perjury case; that the perjury case was on trial in the district court of Oklahoma county; that the matters he testified to were material to the issues in that cause; that he was sworn by the deputy district clerk of the court, who was authorised to administer said oath; that he testified as such witness. The testimony is then set out specifically, and followed by the proper averments of the falsity of the testimony given, and that the defendant knew it to be false, and did not believe it to be true. *Held*, that the indictment was sufficient on demurrer.

8. TIME TO PLEAD—*Waiver of Right.*—If a defendant fails to require time before moving to set aside the indictment and demurring thereto, he waives his right to further time; and it was too late to demand it after his motion to quash, demurrer and plea in abatement had been over-ruled.

9. MATERIALITY OF FALSE TESTIMONY—*Proof of Same.*—When the materiality of the false testimony is not apparent from the facts pleaded, it becomes necessary, on the trial of the person charged with the perjury, for the prosecution to show what the issues were in the former case, and wherein the matters testified to were material to those issues. The materiality of such matter must be established by evidence, the same as any other ingredient of the crime, and cannot be left to inference.

10. IMMATERIAL TESTIMONY—*Perjury.*—If a witness be examined in chief, and give *no evidence* material to the issue, no assignment of perjury can be made on his cross-examination, as to the matters testi-fied to in chief, on the ground that such cross-examination was ma-terial as affecting his credibility. In such case the credibility of the witness is wholly immaterial and without influence on the result of the trial.

*Appeal from the District Court of Oklahoma County,
Hon. John G. Clark, Judge. Reversed.*

*Amos Green & Son*, for appellant.

*Horace Speed*, for appellee.

The opinion of the court was delivered by

BURFORD, J. :   The plaintiff in error was charged by
indictment on the Federal side of the district court of
Oklahoma county, with the crime of perjury, tried by
jury, convicted, and sentenced to pay a fine of one
dollar, and that he be imprisoned for a term of four
years.

The indictment charges in substance that, in the dis-
trict court of Oklahoma county on the 2d day of May,
1892, a certain cause was then and there pending, and
came on to be tried, wherein the United States of
America was plaintiff and Curt W. Blackburn was de-
fendent , wherein the said Blackburn was charged with
having committed the crime of perjury in the United
States land office at Oklahoma City, Oklahoma Terri-
tory, in said county, on the 7th day of November, 1890,
in testifying in a certain contest case, that he, the said
Blackburn,saw one Kattie A. Woodruff in a spring wagon
with her father, A. B. Woodruff, at the line between
the Pottawatomie reservation and the Oklahoma coun-
try, at the hour of 12 o'clock noon, on the 22d day of
April, 1889.   And on the trial of said Blackburn's case,
it became and was a material question, whether Grant
Stanley consulted with one J. Alton Blackburn about
the making of a contest affidavit, and the putting of a
contest against the homestead entry of Kattie A.
Woodruff on the N. E. $\frac{1}{4}$ of Sec. 34, in Twp. 12 N, R. 3
W., in said Territory.

That it also became material whether Grant Stanley
did at any time, upon talking with said J. Alton Black-

burn, give him, the said Blackburn, a form of affidavit to be by him used and with the expectation that he, the said Blackburn, would use it in filing a contest against the homestead entry of the said Kattie A. Woodruff.

That it also became a material question whether or not the said Grant Stanley at the time he gave said form of affidavit to the said Blackburn, did not understand that said Alton Blackburn would probably use said form of affidavit in contest against the homestead entry of the said Katie A. Woodruff.

That it also became a material question whether said Stanley did not at the time he gave said Alton Blackburn the form of affidavit aforesaid understand how he, the said Alton Blackburn, would use said affidavit.

That it also became a material question whether the said Grant Stanley was present at the time the said J. Alton Blackburn talked with one Frank Woodruff in regard to said contest affidavit, at a time prior to, or about, the first day of February in the year 1890.

It also became and was a material question whether the said Grant Stanley did not give the said Alton Blackburn a form of contest affidavit to be used in contesting the said homestead entry of the said Katie A. Woodruff.

That it also became a material question whether or not on or about the first day of February, 1890, the said Grant Stanley dictated to the said J. Alton Blackburn, a contest affidavit against the homestead entry of the said Katie A. Woodruff, and it then and there became a material question whether the said Grant Stanley at the time he dictated the form of contest affidavit to the said J. Alton Blackburn understood that such form would be used in the contest against the homestead entry of the said Katie A. Woodruff.

And it also became a material question whether or not the said Grant Stanley had dictated to the said J.

Alton Blackburn the written matter in the body of a certain land contest affidavit against the homestead entry of Katie A. Woodruff of the said N. E. ¼ Sec. 34, Twp. 12 N., R. 3 W.

And then and there Grant Stanley was produced as a witness in said cause in said district court, and as such witness was duly sworn to testify the truth, the whole truth and nothing but the truth, in said cause by W. W. Scott, deputy clerk of said court, who was then and there authorized to administer such oath.

The indictment then specifically sets forth, that as such witness, Stanley testified, in reference to all the questions above enumerated, and sets forth his testimony on each particular question, then follows the allegation of the falsity of the testimony so given, and the allegation that the said Stanley knew it was false, and that it was not believed by him to be true, but was knowingly, wilfully, fraudulently and feloneously given.

There are a number of assignments of error attacking the regularity of the proceedings of the court below, some of which are properly in the record and some are not, and many are frivolous and without merit.

The defendant in the court below first filed his motion and affidavit for a change of judge, alleging bias and prejudice of the trial judge. This application was overruled and excepted to, and the plaintiff in error complains of this ruling of the court as being in conflict with the organic act, and the code of criminal procedure.

We have repeatedly held that in matters of practice in the trial of Federal cases our courts are governed by the Territorial code of criminal procedure so far as the same is applicable, and not in conflict with some Federal statute on the same subject. Section 10, of the organic act, 26 Stat. at Large p. 87, provides that all offences

committed in the Territory, if committed in any organized county, shall be prosecuted and tried within said county, but any case civil or criminal may be removed by change of venue to another county.  There are no causes stated for which such changes may be granted from one county to another, and hence we are to conclude that it is left to the legislature to provide the causes for which changes of venue may be had, and the manner of perfecting the same.  No where in the organic act is any provision made for a change of judge for any cause.

The code of criminal procedure, Chap. 72, Art. 8, § 49, p. 991, Oklahoma Statutes, provides :

"If the accused shall make affidavit that he cannot have an impartial trial by reason of the bias or prejudice of the presiding judge of the district court where the indictment is pending, the judge of such court shall designate and call any other judge of a district court to preside at such trial, and it shall be the duty of such judge to so preside and to do any other act in reference thereto, as though he was the presiding judge of such district court."

There is no provision in the criminal procedure act authorizing the venue to be changed from one county to another in a criminal cause on account of the bias or prejudice of the presiding judge.

The organic act, § 9, provides that the supreme court of the Territory shall consist of a chief justice and two associate justices, that said Territory shall be divided into three judicial districts, and a district court shall be held in each county in said district by one of the justices of the supreme court, at such place and time as may be prescribed by law, and each judge after assignment shall reside in the district to which he is assigned.  The supreme court shall define said judicial districts, and shall fix the times and places at each

county seat in each district where court shall be held, and designate the judge who shall preside therein.

Under these provisions the county of Oklahoma was embraced in the second judicial district, and Associate Justice Clark assigned by an order of the supreme court to preside in said district, and each of the other justices had been assigned to their respective districts.

After this order of assignment, the judge is required to reside within the district to which he is assigned, and he is vested with no judicial power as a district judge outside of his district, and the legislature has no power to confer in on him. Our district courts are creatures of the federal congress and derive their powers and authority from the laws of the United States, and the act of the legislature giving one judge power to call another from his district and requiring him to go into another district on the order of the presiding judge, as contemplated in our criminal procedure, is not in harmony with the laws of congress and is void and of no effect.

There is no change of judge allowed in criminal cases in the Federal courts, nor is any such change required by any valid law of this Territory, hence the trial court committed no error in overruling the motion for a change of venue from the judge.

The plaintiff in error next moved the court below to quash the indictment for the reason that the grand jury that found said indictment was not drawn, sworn, empaneled and charged as provided by the statutes of the Territory of Oklahoma, and for the reason that the grand jury which returned the indictment was a special jury empaneled after the regular jury for the term had been discharged.

This motion was overruled by the court and exceptions saved. There is in our criminal procedure no such proceedings as a motion to quash, but this motion

comes properly under the practice designated by the code, as a motion to set aside the indictment.

An indictment may be set aside by the court upon the motion of the defendant: *First*, when it is not found endorsed, presented or filed, as prescribed by this act. *Second*, when the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment, or endorsed thereon. *Third*, when a person is permitted to be present during the session of the grand jury while the vote on the finding is being taken.

Most of these provisions are applicable to the trial of Federal cases, but inasmuch as the motion to quash, filed by the plaintiff in error, does not come within any of its previsions, or contain any of the clauses for which an indictment may be set aside, the motion was properly overruled.

The plaintiff in error then filed a plea in abatement, in which he alleged that the grand jury which returned the indictment was not drawn, selected and empaneled as required by statute. Issue was joined on this plea, a trial had, and a finding for the United States.

This plea is not authorized by our criminal procedure and there could be no error in overruling the plea.

The irregularity of selecting and empaneling a grand jury cannot be attacked by plea in abatement, but such questions can be raised only by challenge to the panel. The criminal code makes ample provision for taking advantage of all irregularities in the selection of the grand jury by challenge at the proper time, and in the manner prescribed, and § 14, Art. 6, Chap. 72 provides :

"Neither the Territory nor the person held to answer a charge for a public offence can take advantage of any objection to the panel or to any individual grand juror, unless it be by challenge, and before the

grand jury is sworn and before the indictment is found. The court may in its discretion, upon a good cause shown, receive and allow a challenge."

This procedure governs in the trial of Federal cases, and is the only manner in which the panel of the grand jury can be attacked. After an indictment has been returned, the only mode of attack is then by motion to set aside or demurrer.

After the overruling of the plea in abatement, a demurrer was filed to the indictment, which raises but one question, viz; the sufficiency of the allegation thereof to constitute a public offense.

We have examined the indictment with considerable degree of care, and in our judgment it conforms to the usual forms and precedents in such cases, and contains all the requirements necessary to constitute the charge of perjury. It is alleged that Stanley was sworn as a witness in a perjury case on trial in the district court in Oklahoma county; that the matters he testified to were material to the issues in that cause; that he was sworn by the deputy district clerk of the court, who was authorized to administer said oath; that he testified as such witness. The testimony is then set out specifically, and this is followed by the proper averments of the falsity of the testimony given, and that Stanley knew it was false and did not at the time believe it to be true. It has the necessary caption and the formal qualifying words to show that the false swearing was wilful and feloneous. · The indictment was sufficient and the demurrer was properly overruled. (Bishop's Directions and Forms, § 875, N. 6. Whorton's Precedents of Indictments, 581 to 597.)

After the defendent in the court below had filed his motion to quash, his plea in abatement, and his demurrer to the indictment in their order, he then requested until the next day to plead to the indictment, which

was refused, and on arraignment he stood mute, and the court entered a plea of not guilty for him. He complains of this action of the court and assigns it as error. Section 5543, Statutes of Oklahoma, provides as follows:

"If on the arraignment, the defendant requires it, he must be allowed until the next day, or such future time may be allowed him as the court may deem reasonable to answer the indictment.

"Sec. 5544. If the defendant do not require time, he may, in answer to the arraignment, either move the court to set aside the indictment, or may demur, or plead thereto.

"Sec. 5548. If the motion be denied, the defendant must immediately answer to the indictment, either by demurring or pleading thereto."

By his failure to require time before moving to set aside and demurring, he waived his right to further time, and it was too late to demand it after his motion to quash, demurrer and plea in abatement had been overruled. (Bishop's Criminal Procecdure, Vol. 1. § 744.)

The 17th assignment of error is that the court erred in overruling the defendant's motion for a new trial.

The 12th specification assigned as cause for a new trial, is that the court erred in giving the first, second, third, fourth, fifth, sixth, seventh, thirteenth, sixteenth and seventeenth instructions to the jury, to the giving of which instructions, and each and every one of which, the defendant, by his attorney, at the time then and there excepted.

The first, second and third instructions were unobjectionable and there was no error in giving them.

No. 4 is as follows:

"The materiality of the testimony, upon which the perjury is assigned, is a question of law for the court, and not of fact for the jury."

No. 5 reads:

"If you find that in the case described in the indictment under the circumstances stated in the indictment, the defendent, Grant Stanley, testified substantially as testified to by the witness, Charles E. Glackner, and that his testimony contained substantially the matters charged in the indictment, then you are instructed that such testimony of said Stanley was material in the case then on trial; and if you find that the testimony of said Stanley, the defendant, was wilfully and knowingly false in the particulars set out in the charge of the indictment and traversed by one or more of the assignments of perjury set out in the indictment, then you will find the defendant guilty as charged in the indictment."

The fourth instruction properly states the law; and the fifth was proper if the facts testified to by Stanley in the Blackburn case were material to any issue in that case, and the materiality was made to appear to the court in the trial of this cause. It will be observed that there are not such facts set forth in the indictment in this case as to make the materiality apparant from the face of the indictment. The facts that Stanley testified to in the Blackburn case are set out in the indictment against him in this case, and the allegation is made "that said testimony became and was then and there material in that case." This allegation is sufficient for the purpose of the indictment, as the more modern authorities hold that it is not necessary that the facts set forth should show the materiality of the alleged false testimony, if the allegation is made that such false testimony was material. When the materiality is not apparant from the facts pleaded it becomes necessary on the trial of the person charged with the perjury to show by competent testimony what the issues were in the former case and wherein the matters testified to, upon which the perjury is based, were material to those issues. For the materiality of such mat-

ter must be established by the evidence the same as any other ingredient of the crime and cannot be left to inference. It is a familiar principle that all false swearing is not perjury; it is only indictable when the false testimony is material to some question properly before the court and involve in the issues in the cause in which the alleged false testimony was given.

The trial court in the case at bar instructed the jury that if Stanley testified in the Blackburn case substantially as charged in the indictment, then as a matter of law, such testimony of said Stanley was material. Upon what did the trial court base this conclusion? We have examined the evidence given in the case with unusual care, and if there is a single fact testified to by any witness or any documentary evidence in the record by which it can be determined how or wherin the evidence of Stanley was material to any fact, direct or collateral, in the Blackburn case, we have failed to discover it.

In the Blackburn case, in which Stanley testified as a witness, Blackburn was charged with having testified in the United States land office to the effect that he, Blackburn, saw Katie A. Woodruff in a spring wagon with her father, A. B. Woodruff, at the line between the Pottawatomie reservation and the Oklahoma country, at the hour of 12 o'clock, noon, on the 22d day of April, 1889. This, it was alleged, was false, that he, Blackburn, did not see Katie A. Woodruff at said place at said time.

The issues in the Blackburn case then were, did he, Blackburn, testify as charged, and was such testimony false, and was it material to some issue in the contest case pending in said land office?

On the trial of Stanley the only evidence given relates to the question as to what his testimony was in

the Blackburn case, and from these facts alone the court could not possibly know that what he did testify to was material in the Blackburn case. Upon the contrary, the evidence in this case shows that Stanley was called by the defense as a witness for Blackburn. His testimony in chief in that case was as follows:

"Q. What is your profession? A. Attorney at law.

"Q. Were you or not one of the attorneys of Miss Katie A. Woodruff in the trial of her contest case? A. I was.

"Q. State who was your assistant? A. Chester Howe.

"Q. State whether or not, since the commencement of this trial, you had any conversation with Mr. Speed, touching Katie A. Woodruff and yourself? A. I did.

"Q. Where? A. In this room.

"Q. Do you know about when it was? A. About 2 o'clock Friday.

"Q. This last Friday do you mean? A. Thursday or Friday, I think it was Friday.

"Q. Will you state to the jury what was said to you, by Mr. Speed, if anything, in that connection, touching Miss Katie Woodruff being a witness in this case? A. I was sitting over there, back of where Mr. Travers is, and Mr. Speed came to me and said he wanted to have a conversation with me sometime about noon that day. I asked him what about. I told him I would be right there just at noon. He said it was about Miss Woodruff coming on the stand in this case. And said to me that if she did there was a whole lot of trouble ahead for me. I asked him what he meant. I told him I was not an attorney in this case. He said I was, and that Chester Howe was managing that part of the case; and if Miss Katie Woodruff went on it would be because she was forced on, and there would be a whole lot of trouble ahead for me. I said I didn't think so."

This was all the evidence of Stanley on his examination in chief. There was nothing in this testimony

that was material to any proper issue in the case of Blackburn. It was evidently introduced by the defendant for the sole purpose of casting some reflection upon the conduct of the United States attorney, Mr. Speed, and could have aided the jury in no way in determining the guilt or innocence of Blackburn. The evidence was irrelevant and immaterial, and not pertinent to any question before the jury in the Blackburn case, and should have been summarily ruled out by the court and not allowed to go before the jury in the case.

Based upon this examination in chief, the testimony on which the perjury is assigned was given by Stanley on cross-examination. It has no relation to the testimony in chief, and was not a proper cross-examination for any purpose except to show his interest, bias, or prejudice, to affect his credibility. But was his credibility a material matter? He had testified to nothing that was material, and it was immaterial whether he was a credible witness or not. If all he testified to in chief had gone to the jury unexplained and uncontradicted, it could not have influenced their verdict in the least or had any bearing upon their minds in determining the question before them.

The fact that a person has allowed a witness to testify to immaterial matters without objection does not entitle him to cross-examine the witness on such immaterial matters or to impeach him. Greenleaf. Vol. 1, § 448, states the rules applicable to this case thus:

"The rule that the evidence offered must correspond with the allegations and be confined to the point in issue excludes all evidence of collateral facts which affords no reasonable inferences as to the principal matters in dispute."

The principal matter in dispute in the Blackburn case was, whether Blackburn saw Katie A. Woodruff

at the east line of Oklahoma at noon of April 22, 1889, and the testimony of Stanley to the effect that Speed said he would make him trouble if Katie Woodruff was forced on the stand to testify could afford no reasonable inference or presumption as to whether Blackburn's evidence was true or not.

Great latitude should be allowed in cross-examination to test the interest, bias, prejudice or character of a witness. Greenleaf again says: "The rule is now considered by the Supreme Court of the United States to be well established that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters he stated in his direct examination," and cites in support of this statement the *P. & T. Ry. Co. v. Stimson*, 14 Pet. 448. Under this rule the cross-examination of Stanley could only have been permitted by the court for the purpose of affecting his credit, and if his credit was in question affecting any material matter, perjury might be based upon such testimony.

But Greenleaf says:

"It is a well settled rule that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, should he deny it, thereby to discredit his testimony." (1 Greenleaf, § 449.)

And as we have before stated the testimony of Stanley in chief was not material in the Blackburn case and was improperly permitted to be introduced. It presented no question for the consideration of the jury and could not in any manner affect the issue in that case ; hence his credit was not a matter to be considered— was wholly immaterial; and the cross-examination was immaterial and irrelevant, and no perjury could be based upon such testimony.

In our view of this case the court erred in instructing the jury that the exidence of Stanley in the Blackburn case was material to the issues in that case; and for such error the cause should be reversed.

And inasmuch as we hold that the testimony on which the perjury is assigned was not material, a new trial would only result in an acquittal. The judgment is reversed with directions to discharge the prisoner.

All the Justices concurring.

On petition for rehearing in the foregoing case, the opinion of the court was delivered by

BURFORD, J.: The United States, by her attorn y, Hon. Horace Speed, has filed a petition for rehearing in the above entitled cause.

It is insisted by counsel for the Government that certain language used by the court in deciding said case, wherein it was said that "false swearing is only ind ci-able when the false testimony is material to some question properly before the court and involved in the issues in the case in which the alleged false testimony was given," is too narrow and liable to be misconstrued, as meaning that testimony to be material must be relevant to the issues made by the pleadings. We do not think the language used susceptable to such construction; yet, in order to avoid any such interpretation, we desire to disclaim any purpose to so promulgate the law. It was not the intention of the court to hold that matter testified to, in order to be material, must be relevant to the issues made by the pleadings, but if it is material to any question, which properly arises in the trial of the cause, either direct or collateral, it may be made the basis of a criminal prosecution for false swearing, and when a witness testifies to any material

matter, his credit then becomes an issue, and any evidence affecting his credit is material matter. Numerous issues of fact may arise in the course of a judicial trial, which are only collateral to the main issues, and yet may well be said to be properly in the case, and within the issues in the case, and this is the broad sense in which the language of the court was used. In any event, this question could not affect the case at bar.

It is further contended by counsel for the government, that this court erred in its application of the law to the principal questions involved in this case.

Counsel insists, that if a witness is improperly permitted to testify to immaterial matters, and testifies falsely on cross-examination, to matters affecting his credit, that such false testimony is a proper subject and basis for an indictment for perjnry.

A number of authorities are cited in support of this proposition. We have examined such of the authorities cited as are at our command, and find that they relate to the competency of the witness, rather than the materiality of the matter sworn to.

If a witness is not competent, and yet is permitted to testify to matter which is material, the testimony will have as much weight with the jury or court as if he were competent. And if his testimony be false, the authorities cited say that perjury may be based upon it.

The author of Bishop's New Criminal Law cites most of the adjudicated cases, both English and American, relating to the crime of perjury, or false swearing, and we find this work admirable authority in criminal matters.

In § 1019, Vol. 2, Bishop's New Criminal Law, it is said, "though a witness is in law incompetent, if in fact

the court admits him, he commits perjury when what he testifies to is wilfully false."

In stating the law in reference to materiality of testimony, it says:

"If the testimony of the witness can have no weight in law as affecting the issue, then, though, false, it is not perjury, because immaterial."

Again it is said, in § 1030:

"For false swearing to be perjury, the thing sworn to must be within and pertinent, or material, to the issue, or question in controversy."

In § 1032, the law is further stated as follows:

"In addition to the primary and direct materiality, whatever evidence tends to influence the result on the direct or any collateral issue is material within our present doctrine but what is not thus adapted to affect any result is not thus material."

In § 1036, the rule is aptly stated thus:

"Whenever the court has admitted evidence, however erroneously, the decision has become to the jury the law of the occassion; they cannot overrule the judge on the question, and refuse to be influenced by what the witness says. *If now what he swears to is adapted to influence them*, and is corruptly false, it is perjury; otherwise, if it can have no effect on their verdict."

Then the true rule deducible from the foregoing, and the authorities cited in support thereof, is,

"Was the alleged false testimony of such a character as to influence the minds of the jury in arriving at a correct verdict, or did it in any manner affect their finding?"

If it is of such a character to influence or affect the verdict, then it is material matter. If not, it is immaterial and, however false it may be, it is not perjury.

Applying these rules to the case at bar, we see no reason for departing from the opinion we have heretofore rendered.

23

It is clear to us, that the evidence in chief of Stanley, in the Blackburn case, was not adapted to in any manner affect the verdict of the jury in that case; that it was not relevant, or material, to any issue, direct or collateral.

Then, inasmuch as he testified in chief to nothing that would in the least influence the minds of the jurors, or affect their verdict, his credit was not in issue. It was immaterial whether he testified truly or falsely in chief, and if his credit was not in issue, then the whole cross-examination was immaterial, and did not relate to any material matter in the case.

A re-examination of the record, argument and authorities confirm us that our original opinion was correct, and that the motion for rerhearing should be overruled.

Motion for re-hearing overruled.

All the Justices concurring.