## CATHERINE WILLIAMS v. STATE.

No. A-6378.   Opinion Filed April 20, 1929.
(276 Pac. 515.)

400

Mathers & Mathers, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Oklahoma county of robbery with firearms, and was sentenced to serve a term of five years in the state penitentiary.

Defendant and J. E. Barnett were jointly charged. A severance was granted, and Barnett was first tried and convicted. The theory of the state in this case is that defendant conspired with Barnett to commit the offense, and that the robbery charged was one of a series of robberies committed by her and Barnett.

The parties had been living together, although defendant admitted she was not married to Barnett. Mrs. Bessie Haskell, a friend of defendant, was the person robbed, which robbery occurred about 4 o'clock in the afternoon. Defendant persuaded Mrs. Haskell to go on an automobile ride with her, and she then took Mrs.

Haskell to Northeast Lake near Oklahoma City, and then went west along Grand boulevard. Mrs. Haskell knew Barnett, and identified him as the person who committed the act of robbery. Thus far there appears to be no serious dispute as to the facts.

Two days prior to the crime charged in this case, it appears defendant induced one Ed Klose to go automobile riding with her. She went with Klose on this ride to Northeast Lake and on Grand boulevard, where they were held up and robbed by Barnett with another man named Harris. Defendant, a witness in her own behalf, was asked on cross-examination if she was acquainted with Klose. She denied knowing him and having been with him on the date he was robbed. The defense interposed was that of alibi.

In rebuttal, the state offered a transcript of the testimony of Klose, who testified as a witness for the state at the preliminary trial before a justice of the peace, in the case in which this defendant, J. E. Barnett, and Harris were charged with the robbery of Klose, which, as stated, took place two days before the robbery charged in this case. The predicate laid for the admission of this transcript was a showing that Klose was out of the state and his attendance could not be had. The testimony of Klose in that case was relevant and material in this case, as showing a plan or scheme of this defendant and Barnett to commit a series of robberies whereby this defendant would lure the victim of the proposed robbery to some place outside Oklahoma City, where they would be intercepted by Barnett alone or with some other person, who would then rob them. This testimony in the main was as to the identity of this defendant as being the person with Klose at the time he was robbed. There is no question but that the transcript of the testimony would have been admissible if it had been given in the preliminary trial in the instant case.

Its admissibility under such circumstances is well settled. Warren v. State, 6 Okla. Cr. 1, 115 P. 812, 34 L. R. A. (N. S.) 1121; Montgomery v. State, 13 Okla. Cr. 652, 166 P. 446; Pierce et al. v. State, 35 Okla. Cr. 67, 248 P. 654; 16 C. J. 839, and authorities cited.

The question here, however, is, Has the constitutional right of confrontation been met? There appear to be a few authorities upon the precise point here presented. Section 20, art. 2, of the State Constitution, in part provides:

"In all criminal prosecutions the accused * * * shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. * * *"

Our statute, section 2349, Comp. St. 1921, among other things, provides that:

"In a criminal action the defendant is entitled: * * * Third. To produce witnesses on his behalf, and to be confronted with the witnesses against him in the presence of the court."

Wigmore on Ev. vol. II, § 1395, in part says:

"In the period when the hearsay rule is being established and ex parte depositions are still used against an accused person, (ante 1364) we find him frequently protesting that the witnesses should be 'brought face to face' or that he should be 'confronted' with the witnesses against him. The final establishment of the hearsay rule, in the early 1700s, meant that this protest was sanctioned as a just one—in other words, that confrontation was required. What was, in principle, the meaning and purpose of this confrontation? So far as there is a rule of confrontation what is the process that satisfies this rule?

"It is generally agreed that the process of confrontation has two purposes, a main and essential one, and a secondary and subordinate one. (1) The main and es-

sential purpose of confrontation is to secure the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining of immediate answers. That this is the true and essential significance of confrontation is demonstrated by the language of counsel and judges from the beginning of the hearsay rule to the present day; * * * Thus the main idea in the process of confrontation is that of the opportunity of cross-examination; the former is merely the drastic feature, the preliminary measure, appurtenant to the latter.

"(2) There is, however, a secondary advantage to be obtained by the personal appearance of the witness; the judge and the jury are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying, and a certain subjective moral effect is produced upon the witness. * * *"

The origin of this requirement of confrontation grew out of and is a part of the hearsay rule, which is defined as the rule which prohibits the use of a person's assertion as equivalent to testimony to the fact asserted, unless the asserter is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and his qualifications to make it. 2 Wig. on Ev. 1364. This rule began in the sixteenth century, and gained complete development in the eighteenth century. The Constitution of the United States contains the substance of this rule in Amendment 6 to the Federal Constitution, which is applicable to citizens of the United States on trial in the federal courts charged with a violation of the Constitution or laws of the United States. Most of the states of the Union have a similar provision in the State Constitution. The language of our Constitution is identical on this point with the Sixth Amendment. It will be observed, however, that this constitutional provision in the various states and in this state does

not require that the accused shall be confronted with the witnesses against him upon a pending trial on the indictment or information. So it is generally held that the requirement is satisfied if the accused has been once confronted by the witnesses against him in any stage of the proceedings upon the same accusation and has had an opportunity of cross-examination by himself or by counsel. It is under this view of the constitutional provision that the testimony of a witness given in a former trial or upon a preliminary in the same case is admitted in evidence. There are also, even under the positive language of the Constitution, some exceptions to the hearsay rule. These exceptions apparently had their origin with the rule, and run with it. Thus a dying declaration is received in evidence as an exception to the hearsay rule. It is generally admitted without question as to its competency, and is a general exception to the requirement of confrontation; to a less extent official statements and evidence of reputation are exceptions. 2 Wig. on Ev. 1398, notes. Both the constitutional and statutory requirements are complied with when a defendant has had the opportunity to cross-examine the witnesses in a preliminary trial before a justice of the peace or upon a former trial upon the same issue. Warren v. State, 6 Okla. Cr. 1, 115 P. 812, 34 L. R. A. (N. S.) 1121.

We are not able to find that the testimony of a witness taken in the preliminary or in the trial of a charge for another distinct offense at a different time and place, although against the same defendant, has been admitted in evidence except in the single case of State v. Von Klein, 71 Or. 159, 142 P. 549, Ann. Cas. 1916C, 1054. It was there held, under conditions similar to those in the instant case, that the testimony was competent.

In the Alabama case of Davis v. State, 17 Ala. 354, the accused was indicted and convicted of the larceny of a mule. On the trial, Saunders, a justice of the peace

called by the state, testified that accused was charged before him of stealing a buggy, and that one Connolly, who at the time of the trial was deceased, testified before him on the examination of the charge in the presence of the accused. Upon this predicate he was permitted to detail the testimony of the deceased witness, Connolly. The court reversed the case for this reason alone, saying:

"But we think it clear that what Connolly stated tending to prove the larceny of the mule was incompetent proof. In order to admit such evidence the point in issue in both actions must be the same. * * * The trial before the magistrate was on the charge of stealing a buggy—there was no charge preferred against the accused for stealing the mule, nor did the magistrate take cognizance of or examine into this charge. The issue or charge tried by the justice was not the same, but differed widely from the issue or crime for which the prisoner was indicted. What Connolly said on the examination of the charge tried by the justice therefore was wholly incompetent evidence on the trial of this cause, and for this reason the evidence of the magistrate was improperly admitted and the judgment must be reversed. * * *"

We can perceive that if in the trial of another case upon another charge, if the particular matter to which the witness testified was the same matter at issue in the case then on trial, and the accused had an equal motive for cross-examination, such confrontation might satisfy the constitutional requirement. But here it is evident that the witness testified in the preliminary as to the defendant being the person with Klose at the time he was robbed by Barnett and Harris, and not that the defendant was the person who participated in the robbery of Mrs. Haskell, the person charged to have been robbed in the instant case. The motive for cross-examination of the witness in that case might or might not have been as strong as in this case. The defendant with her codefendants Barnett and Harris may have been guilty of

the robbery of Klose and not guilty of the robbery of Mrs. Haskell.

In the face of the constitutional provision and the statute above quoted, it cannot be said that the defendant here has been confronted with the witness against her in this case. The admission of a transcript of Klose's testimony taken in the other case violates a constitutional and statutory right and constitutes reversible error.

For the reasons assigned, the case is reversed and remanded.

DAVENPORT and CHAPPELL, JJ., concur.