## CARL PRUITT v. STATE.

No. A.-9090.   Nov. 25, 1936.
(63 Pac. [2d] 776.)

Brett & Brett, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error was by information charged with larceny of domestic animals; was tried, convicted, and sentenced to serve a term in the state penitentiary at hard labor for eight years, from which judgment and sentence the defendant appeals.

In substance the testimony is as follows: E. A. Felker, a resident of McCurtain county, owned certain cattle and horses that ran on the range; he was the owner of two sorrel ponies; the last time he saw these ponies was in the spring of 1934; he missed them in November, 1934, and found them at Dallas, Tex., in December, 1934, in the possession of L. M. Pack.   Witness further stated he had never seen the defendant Carl Pruitt in the country where

the horses ranged; that John Helm and Sam Key went with him to Dallas, Tex., to see the ponies.

The evidence further shows that the defendant had transported the ponies of the witness Felker to Dallas, Tex., and sold them to L. M. Pack.

The defendant admits he sold the two ponies in question to L. M. Pack. The defendant further testified he bought these ponies from Roy Rhoden, at Fort Towson, Okla.; at the time he bought the ponies he was trading, buying, and selling stock; that he had a pasture near Fort Towson in which he kept them. The defendant further stated he used the bank's pen for temporary purposes. The defendant noticed the brand on the ponies at the time he purchased them and told Key it was Ervin Felker's brand, and stated he had no information the horses were stolen. Sam Key stays around Fort Towson part of the time, and north of Swink, and up around Little River and Cypress, and has a cabin up there. This cabin is twelve or thirteen miles northwest of Wright City, and Mr. Felker's stock ranged between Cypress and Little River, and northwest of Wright City, which is about six or seven miles from the Felker Ranch.

Roy Rhoden stated Sam Key approached him in Fort Towson, where he was sitting in a car with some other parties, and after passing the time of day asked him if he wanted to purchase a pair of ponies.

"I went down to Howard Wynn's Gin to look at the ponies, and paid Key $30 for them; I sold them to Carl Pruitt, about nine o'clock in the morning, and he took them away in a pickup; I never heard of them any more. I did not know I was going to be a witness in the case until Carl came and told me he had been arrested for stealing those horses. I sold the horses to Carl; I do not remember the exact time I sold them to him, all I

·know is a man named Sam Key sold them to me, and he had lived in the community off and on for ten or fifteen years; he is one of the Key boys that lived in and near Fort Towson; he was living north of Wright City; I do not know where he is now."

Lewis Collins testified for the defendant, and stated:

"I know Roy Rhoden; I saw him buy some horses from Sam Key; Sam Key came to where Roy Rhoden and I were and wanted to sell two horses; Cooney-Ray-Caldwell was with us; I have known Sam Key for sixteen years. The horses were at the Howard Wynn Gin and we went down to look at them; Sam Key used to live in the mountains in the neighborhood of the Cypress School House north of Wright City. Roy Rhoden is a trader. He kept his stock in Halls lot at Fort Towson. He had a pasture south of Fort Towson known as the Woodchop pasture."

Ray Caldwell in substance testified to the same facts as did the witness Lewis Collins.

The defendant has filed thirteen assignments of error. His thirteenth assignment is the only assignment necessary to be considered, as it states:

"Because the trial court erred in overruling defendant's motion for a new trial."

The other assignments are set forth in the motion for a new trial. The defendant in his brief has incorporated, either in substance or detail, all of the evidence that was introduced in the case, and states this testimony was incorporated in the brief in order that the court may see and realize that the verdict fo the jury is contrary to the evidence, contrary to the law, and is the result of bias, passion, or prejudice on the part of the jury.

The first argument presented by the defendant is the seventh assignment of error, directed at the action of

the court in disqualifying O. F. Stewart and his regular deputies to serve any process in the case, and the appointment of special officers, O. B. Hubbard and Forrest Parson, as special deputies to summons twelve talesmen to serve as jurors. The defendant insists that the action of the court in disqualifying the regular sheriff and his deputies is a reversible error. With this contention of the defendant that the court committed reversible error in having the special deputies to summon the talesmen ordered by the court we cannot agree.

Section 800, O. S. 1931, is as follows:

"At any time during the term of any court, after the petit jury has been drawn and summoned in the manner herein provided for, when, for the trial of any cause, civil or criminal, the regular panel of jurors shall appear to be insufficient, the jury may be completed from talesmen, or the court may direct that an open venire be issued, to the sheriff or other suitable person, for such number of jurors as may be deemed necessary, to be selected from the body of the county, or from such portion of the county as the court may order: Provided, that no person shall serve as a talesman oftener than once a year."

It will be seen from this statute that when the regular panel is exhausted, or shall appear to be insufficient, the court may direct that an open venire be issued to the sheriff or other suitable person to summon such other jurors as may be deemed necessary to be selected from the body of the county, or from such portion of the county as the court may order.

The record shows the sheriff's name was on the information as a witness, and the court seemed to have taken every precaution necessary to see the defendant had a panel of impartial jurors to sit in the trial of his case. The record fails to show how many of the talesmen

served by the special officers were empaneled in the trial of the case, if any, and there is no charge that the jury was impartial, unfair, biased, or prejudiced against the defendant by reason of the fact that they were summoned by a special officer to appear as the jurors ordered to be summoned by the court.

The action of the court in ordering the jurors named in the special venire to be summoned by the special officer did not bias or prejudice the rights of the defendant or prohibit him from having a fair and impartial trial. There is nothing in the record to show that the court acted unfairly in ordering the special venire to be served by the special officers, and the contention of the defendant as to the action of the court being unreasonable is untenable and without merit. No authorities are cited by the defendant supporting his contention.

The defendant complains that the court erred in permitting the testimony of L. M. Pack, taken at the preliminary trial, to be read in evidence in the trial of his case, on the ground that it is not sufficient to show that the defendant Carl Pruitt was confronted by the witness in the preliminary trial at the time the witness Pack is alleged to have given the testimony introduced. It is true, as argued by the defendant, that article 2, § 20, of the Constitution provides, among other things, that the defendant shall be confronted by the witnesses against him.

An examination of the record shows that he must have been confronted by the witness L. M. Pack at the preliminary trial, for the reason the following questions were propounded to L. M. Pack and the following answers given:

"Q. Do you know Carl Pruitt, the defendant here? A. Yes, sir. Q. You bought these two ponies of Carl Pruitt here? A. Yes, sir."

It is further shown the defendant on the witness stand admitted he sold the ponies to L. M. Pack, of Dallas, Tex. He testified be bought them from Roy Rhoden. On the showing made it was not error for the court to admit the transcript of the testimony of L. M. Pack taken at the preliminary trial.

The testimony in this case shows that the defendant had possession of these ponies at Fort Towson, and that he took them away from Fort Towson in what is described by the witness as a pickup, and some time later he took the ponies to Dallas and sold them to L. M. Pack. He testified he bought them from Roy Rhoden. Rhoden says he bought them from Sam Key. Sam Key was not present at the trial. It was shown that Sam Key went with the owner of the ponies to L. M. Pack's place, in Dallas, Tex., and identified the ponies. All of this testimony was presented to the jury under proper instructions of the court.

In Parnell v. State, 39 Okla. 361, 265 P. 660, in the first paragraph of the syllabus this court said:

"Where there is evidence from which a jury may reasonably and logically find the guilt of an accused, the weight and credibility of such evidence is for the jury, who see and observe the witnesses, and this court will not substitute its judgment in such case for that of the jury." Carruthers v. State, 60 Okla. Cr. 173, 63 Pac. (2d) 118.

In Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352, in the first paragraph of the syllabus this court said:

"Where the evidence and the reasonable and logical inferences and deductions to be drawn from it are sufficient to convince the jury beyond a reasonable doubt of the guilt of a defendant, this court will not disturb the verdict for insufficiency." Choate v. State, 37 Okla. Cr. 314, 258 Pac. 360; Campbell v. State, 23 Okla. Cr. 250, 214 Pac. 738; Carruthers v. State, supra.

The jury heard all the evidence and had an opportunity to judge the demeanor of the witnesses on the stand, and from the verdict returned it is clear that they did not believe the statements of defendant's witnesses. The evidence is sufficient to sustain the judgment.

The defendant was accorded a fair and impartial trial. There are no errors in the record that would justify this court in reversing the case.

The judgment is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.