MILES v. STATE.

No. A–11932.

Criminal Court of Appeals of Oklahoma.

March 16, 1954.

M. S. Simms, Sand Springs, Primus C. Wade, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error W. F. Miles, defendant below, was charged in the district court of Tulsa county, Oklahoma, by information

with the commission of the crime of perjury, Title 21, §§ 491, 497, O.S.1951, second and subsequent offense, Title 21, § 51, O.S. 1951. The defendant was tried by a jury, convicted, but the jury being unable to agree on the punishment, the same was left to the determination of the trial judge. On the jury's verdict, the trial judge fixed the punishment at 10 years in the penitentiary and entered judgment accordingly, from which this appeal has been perfected.

This case has been advanced on the docket because of its peculiar importance. Perjury corrupts and defiles the stream of justice. Every effort should be used to thwart the slightest temptation to resort to it. All courts should be vigilant, in their endeavors to punish perjury, and those who seek to make use of it as an instrument of fraud. Delay in so doing places a premium on perjury and in the eyes of the public makes a mockery of judicial administration. Let this case stand as a beacon light of expectancy to those who would resort to false swearing as a means of consummating the perfidious objectives of rascality. This court proposes to expedite the ends of justice, in such cases and see to it that perjurors are brought to justice as rapidly as is possible, within the bounds of due process.

The information herein alleged, in substance, that this charge grew out of a civil action tried before Honorable Elmer Adams, district judge of Tulsa county, Oklahoma, on February 19, 1952, said civil case being styled Bertie E. Woodson v. Frank Miles, No. 82715; Frank Miles defendant therein, being the same person as the defendant W. F. Miles herein. Said civil action was filed on September 10, 1951. In that action Mrs. Woodson alleged in substance that she was the owner of certain real estate described in the petition in said case. The petition further alleged that the defendant Frank Miles had caused to be executed on September 2, 1950 and filed on August 23, 1951 a quit claim deed from Mrs. Woodson to himself purporting to convey certain valuable property described as follows, to wit, East 50 feet of the West 100 feet of Lot 5, Block 47, original townsite of the city of Tulsa,

upon which was located a hotel, and Lot 8, Block 1, Fairview addition to the city of Tulsa. Said petition in the civil action further alleged that Bertie E. Woodson did not execute and deliver the quit claim deed to the defendant therein Frank Miles to the hotel property and the lot in Fairview addition and had no knowledge thereof prior to September 8, 1951. She further alleged that no consideration was paid for said hotel and Fairview property, and that the quit claim deed was fraudulent and void, and that the same should be cancelled, etc. Thereafter the said Bertie E. Woodson became ill, and died on October 9, 1951, and an order of revivor was entered in said civil action. The case came on for trial on the 19th day of February 1952 while said civil action was being tried, and W. F. Miles who is known therein as Frank Miles testified for himself after being duly sworn, as by law provided, in substance, that the said deed was executed in his office at 107½ North Greenwood in Tulsa, Oklahoma, by Bertie E. Woodson in the presence of Mrs. Effie Smith and Mrs. Viola Lewis and notarized by the latter person on September 2, 1950.

The information specifically alleged that said testimony so given was a material matter in and to said civil action, then on trial, and all of which testimony in relation thereto was false and known to be false when so testified to by the defendant therein Frank Miles, being the same person as W. F. Miles herein. The information further alleged that the defendant had two prior convictions in cases of perjury and subornation of perjury in the United States District Court for the Eastern District of Oklahoma growing out of indictments returned thereon on March 1, 1932, for which crimes he was sentenced to 3 years in the United States Penitentiary at Leavenworth, Kansas, said sentences to run concurrently.

The state's evidence on this charge of perjury shows that the quit claim deed was not executed and acknowledged as testified to in the civil action by the said Frank Miles or W. F. Miles, in his office in the presence of Mrs Lewis and Mrs. Woodson, and that Mrs. Woodson's acknowledgment thereof was not taken in his office as testi-

fied to by him, but to the contrary, the deed was presented to Mrs. Viola Lewis by the defendant in her home with the request by the defendant that Mrs. Woodson had instructed him to present the deed to Mrs. Lewis with the assurance by Mrs. Miles that Mrs. Woodson had requested Mrs. Lewis to thus take her acknowledgment.

The testimony of Mrs. Woodson in the civil case was preserved before her demise by deposition, and was read into the record of the trial of the civil action. This testimony was offered in the perjury trial herein, as limited in the trial court's instruction No. 6, for the purpose of showing the materiality of the testimony given by Frank Miles in the civil action. The testimony of Mrs. Woodson in substance was to the effect that when she executed the quit claim deed involved in the civil action it contained the name of Dr. Burt who was supposed to have purchased a vacant lot on Peoria Street and for which the consideration was $75, and for which she was paid by Frank Miles' check. She further testified that the name of Frank Miles did not appear in the deed, nor did the description of the hotel property as hereinbefore described, and neither did the Fairview property appear thereon. She testified she saw the quit claim deed last in 1950 in her home before she made the discovery of the fraudulent alterations and additions thereto on September 8, 1951. The quit claim deed shows on its face some descriptive matter had been stricken and the other descriptions written in on the line below and also discloses alteration by erasure where the grantee was named. On these facts in the civil action the trial court found for the plaintiff, and ordered cancellation of the void deed.

On the trial of this case on the criminal charge of perjury the defendant did not testify. He contends that the trial court erred in not giving his requested instruction No. 1, as follows:

"You are instructed that no acknowledgment or recording shall be necessary to the validity of any deed, mortgage or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease or other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third person unless acknowledged and recorded."

The defendant contends that in view of the fact that Mrs. Woodson admitted signing and delivering the deed to the defendant and the further fact that the trial court in the criminal case submitted the materiality of the evidence given by the defendant in the civil case, and of the further fact that the civil action was one between the grantor and grantee of the deed, the jury should have been instructed as requested. The defendant cited no authority in support of this proposition. To this contention the Attorney General responds that the defendant was specifically charged with testifying falsely that a certain deed was executed in his office in the presence of Effie Smith and Viola Lewis and at said time was notarized by the said Viola Lewis. In effect he says the issue was not between the parties to the deed but between the defendant and the state on his false testimony. The record is sufficient to show that the defendant falsely testified in the civil action and that the deed was not executed in his office and that Mrs. Lewis was not present and that the deed was not actually acknowledged by her but was presented to her in her home by the defendant and her acknowledgment placed thereon at his request upon his assurance that Mrs. Woodson had instructed him to present the deed to Mrs. Lewis for acknowledgment. We are unable to see the relevancy of the requested instruction. Such an instruction might have been pertinent to an issue between the parties to the deed in the civil action or as to intervening rights of third parties, therein. But in the case at bar the lack of relevancy of the instruction would only have injected a note of unwarranted confusion and would have been misleading to the jury, in that none of the issues set forth in the instruction are involved in the case at bar, since the sole and only issue herein involved was whether or not the defendant gave false testimony on a material fact involved in the civil action. It was not error for the trial court to refuse the requested instruction.

[2-6] The defendant's second contention is the trial court erred in not sustaining his demurrer to the state's evidence on the theory that the testimony in regard to the acknowledgment of the deed, relied on for conviction herein, was not a material issue in the civil action and therefore the state failed to prove an essential element of the crime of perjury, the materiality of the matter concerning which the alleged testimony was given. This contention is without merit for the reason that the testimony, in regard to the acknowledgment of the quit claim deed, given in the civil proceeding heretofore mentioned was given for the purpose of influencing a judicial decision and therefore it was material. If the trial court had elected to believe the false testimony of the defendant as to the time, place and manner of execution of the deed and as to the grantee, as testified to by the defendant, he would have been influenced thereby to believe that the quit claim deed contained the descriptions and the name of the grantee as the same appeared at the time the false acknowledgment was taken thereto in the home of Viola Lewis, therefore the said testimony would have been decisive of the issue in the lawsuit. Mrs. Woodson testified none of said matters were in the deed at the time of the execution of the same by her, and before the acknowledgment was affixed as hereinbefore related. This testimony was given for the purpose of lending support and strength to the defendant's claim of validity of the quit claim deed particularly as to the presence of his name in the deed as grantee (an alteration) and of the hotel property and the Fairview Heights property (an unauthorized insertion or addition) being contained in the deed at the time of its execution. To say the testimony as to the facts of the acknowledgment was not material to the objects and purposes of the defendant in the civil action would be to blind oneself to the facts of the case, and the law applicable thereto. In People v. Pustau, 39 Cal.App.2d 407, 103 P.2d 224, 227, the California court said:

"The test of materiality is met when it can be said that the testimony could have properly influenced the tribunal before which the case was being heard, upon the issues involved."

The false testimony herein was pertinent to the main issue though it did not bear directly on the main issue. In Coleman v. State, 6 Okl.Cr. 252, 118 P. 594, this court said on the point of materiality:

"(a) In order to constitute perjury, it is not necessary that the matter sworn to should be directly and immediately material, but it is sufficient if it is so connected with the matter at issue as to have a legitimate tendency to prove or disprove some fact that is material by giving weight or probability to or detracting from testimony of a witness to such material fact.

"(b) Perjury may be assigned upon false statements affecting the credibility of a witness whose testimony was material to the main issue. For facts sustaining a charge for perjury under this head, see opinion.

"(c) Upon a trial for perjury, the degree of the materiality of the testimony upon which it is based is of no importance. Any false statement made by a witness which detracts from or adds weight and force to the testimony of any witness upon matters that are directly material thereby becomes material itself and constitutes perjury."

To the same effect is White v. State, 48 Okl. Cr. 387, 292 P. 369. On this point also see People v. Guasti, 110 Cal.App.2d 456, 243 P.2d 59.

The third contention of the defendant is the trial court erred in overruling his motions to require the state to make the information more definite and certain and to require it to elect as to which false statement the state desired to risk the conviction. This contention is wholly without merit since it has been consistently held by the courts that several assignments of perjury may be contained in a single information where the assignments related to a single transaction. 48 C.J. 886, Notes 75, 76; Dunn v. State, 15 Okl.Cr. 245, 176 P. 86, wherein it was said:

"In an information for perjury, the perjury may be alleged in the false

swearing as to several different statements, provided the alleged false statements were testified to in the same trial by the defendant charged with the perjury, without rendering such information subject to demurrer.

"In an information charging perjury to have been committed in two different statements in the same trial, a conviction may be properly had upon legal proof of the defendant's having corruptly and knowingly testified as to either one of the said false statements."

Galindo v. State, 129 Tex.Cr.R. 532, 89 S. W.2d 990; 70 C.J.S., Perjury, § 49, page 519, Note 97. It is apparent this contention is without merit.

 The defendant's fourth proposition is that the trial court erred in admitting in evidence in the trial of the perjury case portions of the hereinbefore mentioned testimony of Bertie E. Woodson taken by deposition and offered in evidence in the trial of the civil case in which case the defendant gave the alleged perjured testimony. This testimony was admitted by the trial judge herein for the limited purpose of showing the materiality of the false testimony of the defendant in the civil case as an essential element of proof to sustain the perjury charge herein. Mrs. Woodson at the time of the trial herein and at the time of trial of the civil action was deceased. The defendant contends he was thus denied his constitutional and statutory right of confrontation herein under the provisions of Article II, § XX, Oklahoma Constitution, and Title 22, § 13, O.S.1951; the pertinent part of the constitutional provision being, "and be confronted with the witnesses against him"; and the statutory provision, Title 22, § 13, Subd. 3, the pertinent part of which being, "and to be confronted with the witnesses against him in the presence of the court." The foregoing provisions of the Oklahoma Constitution and statute in this connection are ably treated in Williams v. State, 42 Okl.Cr. 399, at pages 401, 402, 403, 404, 405, 276 P. 515, at page 516, 517:

"There is no question but that the transcript of the testimony would have been admissible if it had been given in the preliminary trial in the instant case. Its admissibility under such circumstances is well settled. Warren v. State, 6 Okl.Cr. 1, 115 P. 812, 34 L.R.A., N.S., 1121; Montgomery v. State, 13 Okl.Cr. 652, 166 P. 446; Pierce v. State [35 Okl.Cr. 67], 248 P. 654; 16 C.J. 839, and authorities cited.

"The question here, however, is, Has the constitutional right of confrontation been met? There appear to be a few authorities upon the precise point here presented. Section 20, art. 2, of the State Constitution, in part provides: 'In all criminal prosecutions the accused * * * shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. * * *'

"Our statute, section 2349, Comp.St. 1921 [22 O.S.1951 § 13], among other things, provides that: 'In a criminal action the defendant is entitled: * * * Third. To produce witnesses on his behalf, and to be confronted with the witnesses against him in the presence of the court.'

"Wigmore on Ev. vol. II, § 1395, in part says: * * *

" 'It is generally agreed that the process of confrontation has two purposes, a main and essential one, and a secondary and subordinate one. (1) The main and essential purpose of confrontation is to secure the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining of immediate answers. That this is the true and essential significance of confrontation is demonstrated by the language of counsel and judges from the beginning of the Hearsay rule to the present day: * * * Thus the main idea in the process of confronta-

tion is that of the opportunity of cross-examination; the former is merely the drastic feature, the preliminary measure, appurtenant to the latter.

" '(2) There is, however, a secondary advantage to be obtained by the personal appearance of the witness; the judge and the jury are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying, and a certain subjective moral effect is produced upon the witness. * * *' * * *

"It will be observed, however, that this constitutional provision in the various states and in this state does not require that the accused shall be confronted with the witnesses against him upon a pending trial on the indictment or information. So it is generally held that the requirement is satisfied if the accused has been once confronted by the witnesses against him in any stage of the proceedings upon the same accusation and has had an opportunity of cross-examination by himself or by counsel. It is under this view of the constitutional provision that the testimony of a witness given in a former trial or upon a preliminary in the same case is admitted in evidence. * * * Both the constitutional and statutory requirements are complied with when a defendant has had the opportunity to cross-examine the witnesses in a preliminary trial before a justice of the peace or upon a former trial upon the same issue. Warren v. State, 6 Okl. Cr. 1, 115 P. 812, 34 L.R.A.,N.S., 1121."

The last mentioned practice has been held not to contravene the provisions of the Oklahoma Constitution and statute, supra, in a long line of cases, Morrison v. State, 59 Okl.Cr. 245, 57 P.2d 882; Pruitt v. State, 60 Okl.Cr. 210, 63 P.2d 776; Rice v. State, 60 Okl.Cr. 398, 64 P.2d 1240; Burks v. State, 64 Okl.Cr. 285, 79 P.2d 619; Saied v. State, 65 Okl.Cr. 124, 83 P.2d 605; Clark v. State, 63 Okl.Cr. 138, 73 P.2d 481; 122 A.L.R. 426. But we know of no Oklahoma cases holding that the testimony of a witness in a civil case, not the defendant, may be used in a subsequent criminal case against said

defendant on the theory of the absence or death of the said witness whose testimony is sought to be used, in the criminal case. The reasons are of course that the issues in the civil action are not the same, the parties are not the same, and the defendant in every criminal proceeding in Oklahoma under both the Constitution and the statute, has the right of confrontation and cross-examination in the presence of the court. The testimony of Mrs. Woodson given by deposition, and admitted in the civil case to meet the issues therein involved, does not meet the test of the constitutional and statutory requirements, and may be hearsay (it not appearing that the defendant was present at the taking of the same), and therefore inadmissible in the perjury case herein. But that does not mean this case must be reversed, for the defendant by a course of conduct inconsistent with the right of confrontation and cross examination, may waive such constitutional rights. This court has held in many cases that constitutional rights in the nature of personal rights for the benefit of the accused may be waived by a defendant. Starr v. State, 5 Okl.Cr. 440, 115 P. 356; Blagg v. State, 36 Okl.Cr. 337, 254 P. 506; Ex parte Gault, 78 Okl.Cr. 172, 146 P.2d 133, and numerous other cases. The rule is stated in 23 C.J.S., Criminal Law, § 1009, page 377, Note 97, that the defendant in a criminal action may be held to a waiver of the right to confrontation by conduct inconsistent with a purpose to stand on it. It is pointed out in the state's brief that the defendant not only offered some of the same but more of the testimony of Mrs. Woodson given in the civil case from the deposition. He also offered the testimony of Effie Smith, given in the civil case, she being deceased and not available as a witness in the perjury trial of the defendant. In Littrell v. State, 22 Okl.Cr. 1, 209 P. 184, 187, it was said:

"At the former trial Williams was a witness for both the state and the defendant. The record here shows that, after the transcript of the record of Williams' examination as a witness for the state had been read to the jury, the defendant then offered in evidence the transcript of his testimony as a witness

for the defendant, which was also read to the jury. The latter by itself was incomplete, and, in order to be intelligently considered by the jury, the testimony of Williams both as a witness for the state and as a witness for the defendant were necessarily considered together, and this testimony, on the whole, was much more favorable for the defendant than for the state. The constitutional right of the defendant to be confronted by a witness against him is one that may be waived. The court will not relieve an accused person from a criminal conviction where by his own voluntary action he introduces material evidence of an absent witness in his own behalf, connecting up portions of his evidence not covered by other testimony. State v. Vanella, 40 Mont. 326, 106 P. 364, 20 Ann.Cas. 398; 16 C.J. Criminal Law, § 2122."

Apparently the defendant, in the case at bar, felt he could not adequately present his defense without the connecting portions of Mrs. Woodson's testimony and that of Mrs. Smith's testimony. But as pointed out in the Attorney General's brief he did not offer it for a limited purpose as did the state but he offered it for all purposes, but the trial court limited it as he did the state's offer of Mrs. Woodson's testimony, to be considered only on the question of materiality. We are of the opinion that the defendant by adopting Mrs. Woodson's deposition given in the civil action for his own purposes conducted himself in a manner inconsistent with his intent to stand on the objection as to its competency. Moreover his introduction of Effie Smith's testimony given in the civil action, clothed with the same character of incompetency, amplified the inconsistency of his position, and his intent not to stand on the objection to it. We do not believe one should be permitted to object to the use of a deposition by the state, and then use the same portions of the deposition to connect up his defense, and other portions thereof for his own advantage without being held to have waived his original objection as to the competency thereof.

 But another reason why this contention is without merit is found in the harmless nature of Mrs. Woodson's testimony read herein from her deposition. Under the authorities wherein the materiality of the false testimony is not apparent from the facts pleaded, the issues in the former case wherein the perjury was committed may be established by evidence, the same as any other ingredient of the crime, and cannot be left to inference. Stanley v. United States, 1 Okl. 336, 33 P. 1025:

"When the materiality of the false testimony is not apparent from the facts pleaded, it becomes necessary, on the trial of the person charged with the perjury, for the prosecution to show what the issues were in the former case, and wherein the matters testified to were material to those issues. The materiality of such matter must be established by evidence, the same as any other ingredient of the crime, and cannot be left to inference."

The materiality of the false testimony given in a case may be shown in the perjury trial against the one who gave it, by all or so much of the pleadings therein as show the issues. 48 C.J. 894, Note 48, and 70 C.J.S., Perjury, § 57, page 528, Note 59. The pleadings in the civil action, No. 82,715, were competent for this purpose. It was also competent to introduce the record of the defendant's testimony given in the civil case as a predicate for showing both its materiality and its falsity. This being done, Mrs. Viola Lewis' testimony, hereinbefore referred to, was competent to show the falsity of Miles' testimony in the civil case. Mrs. Lewis' testimony clearly establishes the falsity of the defendant's testimony, and in light of the pleadings in the case, goes further, it also pertains to the materiality of the defendant's testimony at least as to the quit claim deed not being a recordable instrument and invalid as to third parties. Under the pleadings offered in evidence by the state, and the proof of Mrs. Lewis, the materiality and the falsity of the testimony of the defendant was sufficiently established. Therefore, we are of the opinion that Mrs. Woodson's testimony given in the civil trial by deposition and offered herein, was cumulative and harmless, Title 22, § 1068, O.S.1951. Certainly this conclusion is ob-

viously clear when considered in view of the fact that in addition to relying on the evidence of Mrs. Woodson to connect up his defense the defendant offered in evidence in his own behalf, the journal entry of judgment in the civil action sustaining the allegations of Mrs. Woodson's petition, and in addition thereto put in evidence herein the trial court's findings in the civil case reading as follows, to wit:

"* * * I find specifically that over a period of years, the defendant had acted as the agent for the plaintiff deceased, and as such agent the defendant owed to the plaintiff the duty of a fiduciary, in view of the fact of the various and many real estate transactions that he had handled for the plaintiff deceased over a period of years. I find specifically that the deed involved in this case has been altered since it was executed and delivered to the defendant, that there was no consideration for this deed. I find that the plaintiff has met the burden of proof, by proving by a preponderance of the evidence the material allegations of the petition. In connection with your argument, Mr. Wade, that the plaintiff is required to have clear, cogent and convincing proof in meeting the allegations of his petition by a preponderance of the evidence, I find specifically that the plaintiff has met the burden of proof by clear, cogent and convincing evidence. However, I think that inasmuch as your client owed to the plaintiff deceased the duty of a fiduciary, you will find the law imposes upon the defendant, or fiduciary in cases such as this, to show by clear and cogent and convincing evidence that the transaction was fair and above board. I find that the defendant Miles has paid no consideration for the deed, has no interest in the property and that the deed in question, after its execution and delivery was kept in the safe of Miles for more than a year and was only filed by the defendant, Miles, after the plaintiff deceased had gone to the hospital in her last illness. Therefore, it follows that the prayer of the plaintiff's petition will have to be granted, and the deed cancelled of record, in accordance with the prayer."

In view of all the foregoing we are of the opinion that the introduction of Mrs. Woodson's testimony by deposition was clearly harmless error.

The defendant's fifth proposition involves a conversation between a member of the jury and one of the state's witnesses, a Mrs. Sango, during the recess before the giving of the instructions by the court to the jury. It does not appear nor is it contended by the defendant that there was any violation of any of the court's rules or admonitions. The record discloses that the matter concerning which the conversation was had was in regard to a wholly innocent matter which in no way was connected with or in any way whatsoever affected the outcome of the case. Our opinion is that this proposition is wholly without merit.

The defendant raises other objections to the proceedings had herein which in light of the prior decisions of this court are wholly without merit. For all the above and foregoing reasons the judgment and sentence herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.