J. D. LEIGH, Petitioner,

v.

W. Lee JOHNSON, Judge of the District
Court of Tulsa County, Okla-
homa, Respondent.

No. A–14602.

Court of Criminal Appeals of Oklahoma.

April 24, 1968.

Jay Dalton, Tulsa, for petitioner.

Ted Flanagan, Asst. Dist. Atty., Tulsa County, for respondent.

BRETT, Judge.

This is an original proceeding in mandamus, in which petitioner requests this Court to direct the Honorable W. Lee Johnson, district judge of Tulsa County, to provide court appointed counsel and casemade at public expense in his appeal of district court case No. 22649, in which case petitioner was convicted for knowingly receiving stolen property, after former conviction of a felony. He was found guilty by a jury, which imposed an indeterminate sentence in the state penitentiary at McAlester, Oklahoma. The jury's verdict of guilty was returned on September 15, 1967, and judgment and sentence was passed September 19, 1967. The following morning, motion for new trial, notice of intent to appeal, and request for casemade at public expense were filed.

Public Defender Clifford E. Hopper initially represented petitioner at his preliminary hearing, but before the case was set for trial in the district court, Mr. Hopper's term of office—as public defender—expired, and he became engaged in the private practice of law in Tulsa. At that time petitioner made his own arrangements with Mr. Hopper to continue as his defense counsel.

Just prior to the date of trial, Mr. Hopper was offered a position on the District Attorney's staff, which was not scheduled to be assumed until after the date set for petitioner's trial. When the case came on for trial, the trial judge made specific inquiry of petitioner concerning his awareness of Mr. Hopper's prospective new position, and explained that he would appoint new counsel if petitioner desired. Petitioner acknowledged his awareness of the situation, and stated that he was most willing to have counsel continue, so Mr. Hopper proceeded with the trial. Petitioner was tried and convicted, after which Mr. Hopper was permitted to withdraw as counsel, and the trial judge appointed Public Defender Green to proceed with the appeal.

Petitioner's new counsel filed the motion for new trial, notice of intent to appeal, and request for casemade at public expense. Judgment and sentence was passed on September 19, 1967, and thereafter on September 29, the court considered the motion for new trial.

When petitioner appeared at that hearing, on September 29, he was represented by a different counsel, Mr. John D. Harris, whose services had been obtained through petitioner's own means. Counsel requested that petitioner be admitted to bail, and informed the court, "Your Honor, at this time we desire not to be heard upon the motion for new trial, but merely stand on the record." Therefore, the motion for new trial was overruled, and petitioner was admitted to $10,000 bail, which he met with a "surety bond" obtained from a professional bail-bondsman.

During the time petitioner was free on bail, he was arrested on other criminal charges and incarcerated in the Tulsa County jail. On January 20, 1968 he mailed a letter to the trial judge in which he set forth the matter of his conviction and continued, "Immediately thereafter I posted an appeal bond, but due to some unforeseen circumstances I am at this time unable to finance my appeal. At this time I am asking this Court to appoint me counsel and prepare me a casemade at State expense due to the fact that I am a poverty victim. Sincerely yours, J. D. Leigh."

Petitioner's letter was not verified, but nonetheless the trial judge set the matter for hearing. Mr. Jay Dalton, who serves

**378**

as appellate counsel for indigent defendants, was called to participate in that hearing on January 30, 1968, when petitioner's request was denied. Thereafter, petition was filed in this Court to mandamus the trial court to meet petitioner's request.

Assistant District Attorney Ted Flanagan filed a response and brief on behalf of respondent herein. The district attorney contends that petitioner was then represented by private counsel, and was granted bail—at his own request—pending his appeal; and, that no extension of time for preparation, settling, serving and certifying of the casemade has been requested—or granted—as provided for in Title 12 Okl. St.Ann. §§ 958, 960, as well as 22 Okl.St. Ann. § 1059. Consequently, since none of those statutory requirements have been met; and insofar as the time within which to comply with the statutes has passed; and since there is no authority to permit the preparation of the casemade at this late date, the trial court is without authority to order the preparation of the casemade, under the circumstances.

It should be noted: Title 22 Okl.St.Ann. § 1059, provides, in substance, that the casemade shall be settled in all respects *as in civil cases.*

Title 12 Okl.St.Ann. § 958 provides: "* * * the case so made, or a copy thereof, shall, within fifteen days after judgment or order is rendered, be served upon the opposite party, or his attorney * * *."

It also provides three days for amendments, and three additional days for settlement and signing by the trial judge, after which it must be attested by the court clerk.

12 Okl.St.Ann. § 960 provides authority for the trial judge to extend, by order, the time to accomplish the statutory requirements for the preparation of casemade, as provided in § 958.

The Assistant District Attorney argues further, that Title 22 O.S.Supp.1965, § 1060, does not repeal or amend the provisions of the civil statutes in Title 12, supra, and,

therefore, those sections must still be complied with.

We will first dispose of the District Attorney's proposition concerning the preparation, settling and certifying of the casemade, because that proposition has some bearing on the request contained in the petition now before this Court.

 Title 22 O.S.1965 Supp. § 1060, was provided by the Oklahoma Legislature for the purpose of simplifying the appeal procedure in criminal cases. The Title to Senate Bill 216, 1965 Regular Session, Oklahoma Legislature, Session Laws, p. 118, reads as follows:

"An Act relating to criminal procedure; amending 22 O.S.1961, §§ 1051, 1054, as amended, and 1060; providing for corrective jurisdiction of certain cases by Court of Criminal Appeals; increasing minimum time for taking appeals; *simplifying methods of taking appeals in criminal cases;* providing for severability; and declaring an emergency." (Emphasis added.)

 It should be observed, when the new § 1060 was provided all reference to "Procedures Civil" was eliminated. The *earlier section* provided that appeals of criminal cases may proceed by casemade and petition in error, and continues:

"* * * in all respects and with all the rights, as provided in 'Procedure, Civil,' and the summons in error shall be served upon the Attorney General, unless the same is waived as in other cases. * * *"

By striking all reference to the "civil procedure", i. e., 12 Okl.St.Ann. §§ 958, 960, the time requirements for preparation of the casemade, and the need for extension thereof, was eliminated; and to that extent, at least, those sections were amended by operation of statutory requirement. This procedural change was considered necessary for the reason that many appeals —even after the petition in error and casemade had reached this Court—were being denied, because frequently the trial court's

extension order provided additional time only for preparation of casemade under Title 12, but did not also extend the time for lodging the appeal under Title 22, governing criminal appeals. Therefore, in order to more adequately provide for the proper administration of justice, and better assure the guarantee of "due process of law", the revised § 1060 was recommended to the Legislature.

Title 22 O.S.Supp.1965, § 1060, presently provides:

"Instead of the appeal hereinbefore provided for, any party desiring to appeal to the Court of Criminal Appeals in any criminal case may proceed by case made and petition in error by filing notice of such intent and by making request for case made, both to be made in writing, in open court, either at the time the judgment is rendered, or within ten days thereafter. *In such appeal the case made must be settled and served and the appeal lodged within the time for such appeal as hereinbefore set out.* Instead of the case made the plaintiff in error may attach to his petition in error a transcript of the proceedings of record in the trial court." (Emphasis supplied)

■ This Court's interpretation of the legislative intent expressed in § 1060 is: When the defendant, files—in writing—his notice of intention to appeal and request for casemade under that section, he thereby assumes full responsibility for perfecting his appeal within the time limit expressed in 22 O.S.Supp.1965, § 1054. That is, from the date of judgment and sentence, a defendant has six months in which to lodge the appeal of a felony conviction, and one hundred and twenty days in which to lodge the appeal of a misdemeanor conviction. Unless the petition in error with casemade, or transcript, is filed in the office of the clerk of this Court within those time limits, this Court is without jurisdiction to consider the appeal. And, there is no authority for this Court to extend that period of time, except that contained in 22 O.S.Supp.1965, § 1073.[1]

■ An exception to this procedure exists when the trial court determines the defendant to be indigent. In that instance, the trial court, by court order, directs the preparation of the casemade and appoints counsel to perfect the appeal, at public expense. Ordinarily, however, such indigent defendant is not admitted to bail, because of his financial inability to make bond.

■■ When a criminal appeal is lodged under § 1060, the trial judge is not required to specify the time for preparation, serving, settling and certifying the casemade, as in civil cases. Instead, it is the defendant's full responsibility to arrange with the court reporter and to order preparation of the casemade, as well as to thereafter properly serve, settle and certify the casemade in sufficient time for the appeal to be lodged in this Court within the time limits set forth in § 1054. Otherwise, the appeal must fail for jurisdictional reasons.

■ This Court has held numerous times that notwithstanding the fact that a defendant has a right to appeal, that right must be exercised within the statutory requirements. See: Goad v. State, 49 Okl. Cr. 261, 293 P. 1116 (1931); Hale v. State, Okl.Cr.App., 409 P.2d 15 (1965); and others.

This Court held in Rose v. State, Okl. Cr.App., 425 P.2d 1000, 1001:

"After said written notice of intent to appeal and request for transcript [or casemade] is given, defendant would automatically have six (6) months from date of judgment and sentence to file his appeal in a felony case in this Court."

Notwithstanding the fact that 22 O.S. Supp.1965, § 1060 *does not repeal* the requirements of the preceding § 1059, it does amend the procedure sufficiently to relieve the time requirements of the civil statutes, when the appeal is lodged under § 1060. Likewise, insofar as it was clearly

---

1. 22 O.S.Supp.1965, § 1073 provides authority for post conviction appeals.

the intention of the Legislature to *simplify* the method of appeal in criminal cases, this Court has strongly urged—in fact insisted—that the amended procedure be followed.

■ Therefore, since petitioner did file in writing, his notice of intent to appeal and request for casemade as provided in § 1060, he met the statutory requirements to initiate his appeal.

We must, therefore, hold that under these circumstances the provisions of the "civil statutes" do not apply; and we therefore deny the district attorney's arguments, as they pertain to the requirements of the civil statutes found in Title 12, when an appeal from a criminal conviction is lodged under § 1060.

We now take up petitioner's contention that he is entitled to court appointed counsel and casemade for his appeal, at State expense.

Some four and a half months after judgment and sentence was passed, and after petitioner had been free on bail, arrested again and incarcerated in the county jail on additional charges, on January 20, 1968 he dispatched an *unverified letter* to the trial judge requesting his appeal forma pauperis. As the result of the letter, the trial judge conducted the hearing on January 30, to determine whether or not petitioner was entitled to an appeal at State expense.

■ It should be remembered, we herein hold that when an appeal is lodged under § 1060, the defendant is charged with the responsibility of meeting the requirements of the statutes to perfect his appeal. Obviously, if a defendant waits five and a half months to arrange with the court reporter to transcribe the casemade in a felony case, there may not be sufficient time left in the "six months" provided by § 1054, to complete the transcription. Consequently, such defendant will have defeated his own appeal, by reason of laches on his part. So, a defendant must initiate his actions for an appeal without undue delay.

However, considering petitioner's specific situation, it is obvious from the record that prior to petitioner's being granted bail, the trial judge considered granting him a forma pauperis appeal. But, when petitioner *elected to accept bail*, and *appeared with a new attorney*—engaged through his own resources—the trial judge became convinced that petitioner must have sufficient means to pay for his own appeal, and especially when petitioner presented a surety bail bond in the amount of $10,000, obtained from a professional bail-bondsman.

Therefore, at the hearing which resulted from the petitioner's letter, the trial judge read from the transcript of October 29, 1967 proceedings, when petitioner's motion for new trial was overruled and when he was admitted to bail. We herewith quote from that transcript, when the Honorable W. Lee Johnson directed the following comments to petitioner, at those proceedings:

"THE COURT: Mr. Hopper defended you and a jury found you guilty and fixed your punishment. The following Monday after you were convicted Mr. Hopper went to work as an Assistant District Attorney and thereupon I assigned Public Defender Green to represent you, because obviously Mr. Hopper could not serve in a dual relationship. Mr. Green filed on your behalf a motion for a new trial the next morning after I sentenced you on the jury verdict, and on the same date filed on your behalf a notice of your intention to appeal to the Criminal Court of Appeals [sic] and a request for a casemade at State expense. At that time, or rather at the time that I sentenced you I advised you of your absolute right to appeal to the Criminal Court of Appeals [sic], and further advised you that if you had no way of financing an appeal or paying for a casemade that I would see that you had counsel to represent you in your appeal and would provide for a casemade at State expense.

"Within a matter of a very few days you were able to make a $10,000 appeal bond through a paid professional bondsman, and you were before the Court on October 29, 1967, at which time this Court said, and I quote:

"'THE COURT: let the record show that Mr. Leigh is presently in court represented by counsel of his own choosing, John S. Harris.'"

Subsequently, at the October 29th hearing, the trial judge inquired of this petitioner as follows:

"And I also understand, Mr. Leigh, that you have now been able to make an appeal bond, is that correct?

"Mr. Leigh: Yes, sir

"The Court: So under these circumstances due to the rules of the Criminal Court of Appeals, I will be unable to provide casemade at public expense."

Referring again to the January 30, 1968 hearing which precipitated this action, the trial judge called the court reporter to testify concerning whether or not the petitioner, or his attorney had taken any steps to request preparation of the casemade and to pay for the same. The court reporter stated that she had contacted petitioner's counsel on several occasions, but each time he informed her that he had been in contact with the family and would contact them again. She stated that the last time she spoke to counsel about the preparation of the casemade, he informed her that his client had been arrested again and was in jail, "and for me to forget about the casemade."

Petitioner's counsel informed the court, that he was reasonably certain that petitioner had made payments to his bondsman during the time he was free on bail, but counsel also stated that petitioner had provided him no funds with which to pay for the preparation of the casemade.

At the conclusion of the hearing, the trial judge permitted Mr. Harris to withdraw as petitioner's counsel. The following day the Public Defender filed a formal affidavit for casemade at public expense,

which the trial court denied. Petition was then filed in this Court for a writ of mandamus to require the trial court to grant petitioner's forma pauperis request.

It appears, therefore, petitioner's position and contention poses this question for the Court to answer: Can a defendant, who has been recognized by the trial court to be indigent, by his subsequent actions, or election of choice, waive the extraordinary "rights of indigency", to which he would have otherwise been entitled, in a criminal prosecution?

■ We are of the opinion the answer to the question posed must be "yes". An indigent defendant may waive his right to appeal at State expense, the same as he can waive any other statutory or constitutional right. The determination to be made in such instance being, did he knowingly and intelligently act, or express his intention, to effect such waiver.

■ The facts herein, that this petitioner not only had the advice of competent counsel of his own selection, but he also had the benefits of previous experience with the criminal law, having heretofore suffered a conviction, are sufficient to convince this Court that his actions were knowingly and intelligently undertaken. Petitioner made his own free election of which right he chose to enjoy: i. e. his right to receive casemade and appeal at State expense, or his right to be free on bail, pending his appeal.

■ Likewise, the record before the Court clearly reveals that the trial judge not only advised this petitioner of his right to appeal, when judgment and sentence was passed on September 19, 1967, but also of his right to casemade and appeal at State expense, if he was unable to afford such. Again, on October 29, 1967 when petitioner's motion for new trial was overruled, the trial judge advised petitioner a second time what the conditions were for him to receive his appeal at State expense. Therefore, we can reach no conclusion other than this petitioner knowingly and intelligently waived his right to appeal at

State expense, by his own choice or election. He is now estopped from reversing his decision and proceeding in forma pauperis. Petitioner cannot now claim that he has been denied *equal protection of the law*, because the trial court offered this petitioner that protection, but he chose instead another more expensive route via the professional bail-bondsman and freedom on bail. Nor is this petitioner in a position to later contend, that he was denied *due process of law*, because he failed to receive his appeal. The trial judge tried to provide that guarantee, but petitioner chose to gamble by his own means and lost.

This Court held in Emerson v. State, Okl.Cr.App., 327 P.2d 505:

> "Defendant in criminal case may waive any right not inalienable given him by statute or constitution which can be relinquished without affecting rights of others and without detriment to community at large; and such waiver may be made either by express agreement *or by conduct, or by failure to insist upon right in seasonable time*." (Emphasis added)

See also Miles v. State, Okl.Cr.App., 268 P.2d 290.

We are, therefore, of the opinion that the trial court properly denied petitioner's forma pauperis application; and that petitioner's application for writ of mandamus should be, and the same is, therefore, denied.

We might add, as a concluding comment, that it may be most problematical—in a county the size of Tulsa County—whether or not the court reporter could complete a trial casemade to meet the requirements of § 1054, supra, when a defendant waits until four and a half months before he initiates his arrangements for such to be transcribed. Such being the case, it would appear to be most likely that such defendant might defeat his own appeal, because of his own laches.

NIX, P. J., and BUSSEY, J., concur.