In the Matter of R.J.W., a minor child.

**K.L.W., Appellant,**

v.

**The STATE of Oklahoma and R.J.W., Appellees.**

No. 73143

Supreme Court of Oklahoma.

March 20, 1990.

Chris Economou, Tulsa, for appellant.

David L. Moss, Dist. Atty., William D. LaFortune, Asst. Dist. Atty., Tulsa, for appellee, State of Okl.

ALMA WILSON, Justice:

In the early morning hours of October 10, 1987, three-month-old J.K.W. died as a result of head injuries. Nine days later, the State of Oklahoma filed a petition alleging that his brother, fifteen-month-old R.J.W., was deprived. On the twentieth day of the month, the father of both boys was charged with first degree murder for the death of J.K.W. On January 6, 1988, R.J.W. was adjudicated as a deprived child as to the natural mother. The father was convicted of first degree manslaughter in a jury trial and a judgment and sentence was entered on April 19, 1988, sentencing him to fifty years' imprisonment.

A second amended petition was filed on March 31, 1989, requesting termination of the appellant's parental rights based upon his conviction in a criminal action for causing the death of a sibling of R.J.W., pursuant to the 1987 amendment of 10 O.S. § 1130(A)(6). *See* 1987 Okla. Sess. Laws ch. 95, § 1. During the hearing a radiologist interpreted x-rays of R.J.W. and testified that he had suffered skull fractures indicating either a car accident or child abuse. Without any prior adjudication of deprived in relation to the father, a jury found that his rights to R.J.W. should be terminated and the trial court entered an order based upon the verdict. The father now appeals to this Court based upon the single issue of the necessity of a prior or simultaneous adjudication of deprived in order to terminate a parent's rights to his child.

The appellant cites *A.E. v. State,* 743 P.2d 1041 (Okla.1987) in support of his proposition that a prior or simultaneous adjudication of deprived is required by law before a parent's rights to his child may be terminated. The portion quoted is found on page 1043 of the opinion: "Any termination of parental rights pursuant to 10 O.S.1981 § 1130 requires either a prior or a simultaneous adjudication of a child's deprived status; further, the prior adjudication must precede termination." In that case, a father's parental rights were extinguished for abandonment. The mother's parental rights were terminated for failure

to follow a contractual agreement drafted by a social worker for the Department of Institutions, Social & Rehabilitative Services. The Court of Appeals affirmed but this Court granted certiorari and reversed based partially upon the absence of a prior adjudication of the child's deprived status.

The quoted portion of *A.E.* cites the five following cases to support the holding. In *Davis v. Davis*, 708 P.2d 1102, 1109 (Okla. 1985), this Court reversed the termination of a father's parental rights, brought by the mother, for withholding child support for over one year. In *Matter of Lyni P.*, 626 P.2d 864, 866 (Okla.1981), this Court reversed the termination of parental rights of a mother who had physically abused her child (*but see Matter of Jerry L.*, 662 P.2d 1372, 1374 [Okla.1983] which overruled *Lyni P.*). In *Matter of Christopher H.*, 577 P.2d 1292, 1293 (Okla.1978), this Court reversed the termination of parental rights of a mother whose child had been previously adjudicated deprived/neglected due to her mental institutionalization and inability to care for him, but whose termination proceeding was based upon other grounds. In *Matter of J.F.C.*, 577 P.2d 1300, 1302 (Okla.1978), this Court reversed the termination of a mother's parental rights in six children because no standards of conduct had been set from the time of the prior adjudication which the mother could follow. Finally, in *Price v. Price*, 573 P.2d 251, 254–55 (Okla.1977) two concurring specially opinions are cited where the Court reversed the termination of a father's parental rights in favor of the paternal grandparents because the evidence was insufficient to show that the children were either dependent or neglected.

Although these cases support prior or simultaneous adjudication of a child's deprived status, none have the same fact situation as the case at bar, and none construe the 1987 amendment to § 1130. The rationale behind the rule found in the cases cited above is to allow the parent an opportunity to correct the behavior which caused the state to intervene in the parent/child relationship. But as *Matter of Jerry L.* held:

> [W]hen the trial court finds the act of physical abuse so serious and of such an extreme nature that it must remove the child from the custody of the parents, it may then entertain a petition to terminate parental rights. To hold that the trial court may remove a child from the home under a petition alleging the child is deprived, but may not terminate parental rights until a second act of abuse occurs, is an effort in futility: a second such act normally should not occur with the child in a foster home under custody of the Department of Human Services.

*Matter of Jerry L.*, 662 P.2d at 1374. The parent is not given a second opportunity to seriously abuse the child.

Although some of the wording remained the same in the 1987 amendment, several significant changes were made in the statute. That amendment lists eight situations allowing for the termination of parental rights. The cases of *A.E.*, *Davis*, *Matter of Lyni P.*, and *Matter of Jerry L.* all construe the 1977 amendment to § 1130, which listed five situations allowing for termination of parental rights. 1977 Okla. Sess. Laws, ch. 259, § 17. Not only were new situations added, but three situations specifically list the necessity of a finding that a child is deprived before the rights can be terminated. Five situations do not mention the necessity of a deprived status before termination. One of those five situations is subsection (A)(6) which provides:

> A. The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:
>
> \*  \*  \*  \*  \*  \*
>
> 6. A conviction in a criminal action that the parent has caused the death of a sibling of the child as a result of the physical or sexual abuse or chronic neglect of such sibling....

In contrast, subparagraph 3 of subsection A provides:

> 3. A finding that:

a. *the child is deprived, as defined in this chapter, and* [Emphasis added.]

b. such condition is caused by or contributed to by acts or omissions of his parent, and

c. termination of parental rights is in the best interests of the child, and

d. the parent has failed to show that the condition which led to the making of said finding has not been corrected although the parent has been given three (3) months to correct the condition; provided, that the parent shall be given notice of any hearing to determine if the condition has been corrected. The court may extend the time in which such parent may show the condition has been corrected, if, in the judgment of the court, such extension of time would be in the best interest of the child. During the period that the parent has to correct the condition the court may return the child to the custody of its parent or guardian, subject to any conditions which it may wish to impose or the court may place the child with an individual or an agency....

Three of the subparagraphs of § 1130(A) specifically require a prior finding of deprivation before the parental rights can be terminated. Under subparagraph 5, there must be either a conviction in a criminal action for child abuse *"or a finding in a deprived child action"* that the child has been abused by the parent before an abusive parent's rights may be terminated. If prior case law still applied, the insertion of the requirement of an adjudication of deprived prior to termination of parental rights would be redundant. Clearly, the legislature, as shown by the amended wording, intended to change the law and require a prior deprivation hearing in limited cases only.

One of the situations which does not require a prior adjudication of the child as deprived is where the parent is convicted in a criminal action for causing the death of a sibling as a result of physical abuse. That fact situation fits the case at bar. The appellant was convicted and sentenced for "Manslaughter I" and sentenced to fifty years as shown by State's Exhibit # 8, the certified copy of the judgment and sentence. Pursuant to the 1987 amendment of § 1130(A)(6), a jury in a juvenile action found that he had been convicted and that his parental rights should be terminated. A prior adjudication of a deprived status of R.J.W. is simply not contemplated in the statute.

Finally, the appellant makes a brief argument that his due process rights were violated by the procedure followed by the court in the case at bar, but other than the fact that he incorrectly believes that he was entitled to a prior adjudication of deprived for R.J.W., he does not cite how any of his other rights were violated and we do not find any due process violations. Accordingly, the judgment of the trial court is AFFIRMED.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN, KAUGER and SUMMERS, JJ., concur.

OPALA, V.C.J., concurs in result.

SIMMS, J., concurs in judgment.