2005 OK CIV APP 50

**In the Matter of P.F., an alleged deprived child,**

**State of Oklahoma, Petitioner/Appellee,**

v.

**George Frazier and Betty Frazier, Respondents/Appellants.**

**No. 101,233.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 28, 2005.

---

Jason Glidewell, Assistant District Attorney, Caddo County, Anadarko, OK, for Petitioner/Appellee.

David A. Stephens, Justus Hefley, Hefley & Stephens Law Office, Anadarko, OK, and Christian Henry, Oklahoma City, OK, for Respondents/Appellants.

Evelyn A. Reiss, Anadarko, OK, for Child.

Opinion by KEITH RAPP, Vice Chief Judge.

¶1 George Frazier (Father) and Betty Frazier (Mother) appeal the trial court judgment adjudicating their daughter, P.F., as a deprived child in an action brought by the Department of Human Services of the State of Oklahoma (DHS).

## BACKGROUND

¶2 Father was accused of sexual abuse of P.F. and inappropriate touching of her person.[1] Mother was accused of failure to protect P.F. In their respective testimony, both parents denied any abuse by Father.

¶3 The State's case begins with the testimony of the DHS representative, W.V., a DHS child welfare worker. She stated that P.F. was taken into custody after an inter-

---

1. The petition is unclear as to whether it alleges only inappropriate touching or whether it in- cludes other forms of sexual abuse.

view with the child. The trial record does not disclose the circumstances leading to DHS' involvement, but contains only the testimony from W.V. that she interviewed P.F. because of allegations of sexual abuse.

¶4 W.V. was permitted to testify as to statements made by P.F. implicating Father in sexual abuse. Parents objected on the ground of hearsay, but the trial court overruled the objection. W.V. was also permitted to testify over Parents' objection as to statements made by two sisters, Nina R., a minor, and Sarah R., an adult at the time of trial, who had stayed in Parents' home for a period. W.V. testified that the sisters disclosed to her that Father had touched them on their breast and buttocks and that Father "touches his daughter." W.V. then testified as to statements made by Sarah R. as to the number of such occurrences and that Sarah said that Mother saw Father touch P.F. and did nothing to stop him. W.V. testified Mother denied the sisters' statements, but admitted that Father tickled P.F. and may have accidently touched her in the breast area.

¶5 Subsequently, W.V. transported P.F. to Oklahoma City for a forensic interview by someone from DHS. The scheduled interviewer did not appear and a substitute conducted the interview. The qualifications of the originally scheduled interviewer and of the substitute were not given. Neither testified or appeared at trial. The interview was recorded as a DVD and viewed by the trial court. At the request of Parents' counsel, the trial court viewed the entire DVD. The State offered the DVD into evidence. The trial court admitted the DVD without objection.[2]

¶6 The interview was conducted in a room with P.F. seated at a table on a small chair and with colored drawing pens and paper available. P.F. engaged in some form of drawing for almost the entire interview. The substitute interviewer began with some preliminary questioning directed to P.F. to ascertain her understanding of telling the truth, her knowledge about her body parts, and her understanding about things that should not occur to her. Thereafter, and for

about forty minutes, the substitute interviewer was unable to obtain any incriminating information from P.F. regarding inappropriate behavior by Father.

¶7 The substitute interviewer is seen on the DVD leaving the interview room with P.F. being left alone for a short time. Then W.V. comes in and begins questioning P.F. W.V. told P.F. to remember and tell the interviewer all that she, P.F., told her about Father. W.V. told P.F. that it was important to tell the interviewer what P.F. had related about her Father and that P.F. needed to tell that to the interviewer.

¶8 After about ten minutes, W.V. and again P.F. was left alone in the room. The substitute interviewer returned. The substitute interviewer asked more than once for P.F. to retell the things she told "Winnie." P.F., after a period in excess of an hour into the interview, said she wanted to go home. In response, the substitute interviewer reiterated that she, the interviewer, needed to talk about the things P.F. told "Winnie." After repeated questioning, the substitute interviewer was unable to obtain anything incriminating about Father from P.F. or what was supposedly said to "Winnie." The substitute then left the interview room for the second time.

¶9 After a few minutes, W.V. returned to the interview. At this point, P.F. said she was freezing and W.V. agreed that it was cold. P.F. also indicated she was hungry, but W.V. told her that they would go to lunch after the interview. After W.V.'s prompting and leading questions and after W.V. telling P.F. that she had to tell the interviewer the things she told her, W.V. elicited statements from P.F. that Father came into her room one time at night, pulled his pants down and put his "weenie" in her. P.F. said she screamed and Mother came into the room angry and made Father leave. P.F. also drew a picture of what she described as Father's "weenie." P.F. said it had not happened before or since. She did not relate anything about fondling or other touching at this stage of the interview. The interview

2. Record, p. 20.

ended without reference to Mother, other than Mother's reaction.

¶ 10 The record indicates that P.F. received a physical examination. However, no medical evidence was presented by the State showing any harm or sexual abuse.

¶ 11 On cross-examination, W.V. acknowledged she was not a qualified forensic interviewer. Nevertheless, W.V. conducted all of the interview where any incriminating statements were made by P.F. and without the apparent presence of the substitute D.H.S. interviewer. According to W.V., the substitute interviewer told her that she, the substitute, had not done a lot of interviews, did not know what questions to ask, and requested W.V. conduct the interview, even though W.V. was not qualified. W.V. acknowledged that she conducted portions of the interview of P.F. when the substitute interviewer stopped. She also acknowledged that P.F. was cold and hungry during the interview and that she refused to provide P.F. with anything to eat until after the conclusion of the interview.[3] W.V. admitted P.F. repeatedly told the substitute forensic interviewer that "nothing happened" with regard to Father.

¶ 12 The next two witnesses are sisters and friends of P.F. Sarah R. testified as to statements made to her by P.F. relating to

Father's touching her. Parents made no objection. Sarah R. further testified that Father had also touched her on an occasion and that she observed Father touching P.F. on one occasion. Cross-examination established that Sarah had moved into Parents' home and that she was a victim of sexual abuse by her own father. She did not implicate Mother.

¶ 13 Nina R. testified that she observed Father touching P.F. in the chest area "where he was not supposed to be touching." She also testified that she had been touched on her chest and back by Father. She did not testify against Mother.

¶ 14 The State rested. Parents' counsel moved to strike the testimony because the State did not call P.F. and the trial court overruled the motion. The child's attorney did not call any witnesses.[4]

¶ 15 Parents then asked to call P.F. as a witness and the State objected. Parents argued that they had a right of confrontation and that the video did not meet all of the requirements for use as testimony in an alternate form. The State argued that P.F.'s video testimony may be admitted into evidence as alternate testimony under 10 O.S. 2001, § 7003–4.2.[5] The trial court sustained the objection, stating:

---

3. P.F. said that she was "freezing" after about an hour into the interview. In the DVD, W.V. agreed with her. This type of behavior—holding a developmentally disabled child, who is known to be cold and hungry, to obtain answers suitable to DHS's representative's purpose—indicates that the representative placed her interest in getting the elicited answers to her interrogation ahead of the best interests of this child.

4. Record, p. 98.

5. The statute provides:

A. This section shall apply only to a proceeding affecting the parent-child, guardian-child or family relationship in which a child twelve (12) years of age or younger is alleged to have been abused, and shall apply only to the statement of that child or other child witness.
B. The recording of an oral statement of the child made before the proceedings begin is admissible into evidence if:
1. The court determines that the time, content and circumstances of the statement provide sufficient indicia of reliability;

2. No attorney for any party is present when the statement is made;
3. The recording is both visual and aural and is recorded on film or videotape or by other electronic means;
4. The recording equipment is capable of making an accurate recording, the operator of the equipment is competent and the recording is accurate and has not been altered;
5. The statement is not made in response to questioning calculated to lead the child to make a particular statement or is clearly shown to be the child's statement and not made solely as a result of a leading or suggestive question;
6. Every voice on the recording is identified;
7. The person conducting the interview of the child in the recording is present at the proceeding and is available to testify or be cross-examined by any party;
8. Each party to the proceeding is afforded an opportunity to view the recording before the recording is offered into evidence; and
9. A copy of a written transcript of the recording transcribed by a licensed or certified court reporter is provided to the parties.

The court's reviewed the DVD that was played here today and finds under Section 7003–4.2 that the State has complied with the statute and will sustain the objection and note your exception.[6]

¶ 16 Parents called three of P.F's teachers to testify. P.F., then eleven years of age, is a special education student, chronologically at fifth grade, but functioning at about a first grade level with an I.Q. of between 50 and 60. All of the teachers had positive things to say about P.F., including that she was a good student for her abilities, she liked to role play, and, as they observed, she was happy with her parents. They observed no indicia of sexual abuse.

¶ 17 Parents renewed their request to call P.F. as a witness and the State again objected. The State added 12 O.S.2001, § 2611.3, as additional ground for the objection. P.F.'s attorney joined in the objection under Title 10 cited above, but also asked that special precautions be taken for P.F.'s benefit if the trial court permitted the testimony. The trial court denied the request to call P.F.

¶ 18 Both Parents testified and denied any wrongdoing. Father denied inappropriate contact with either Sarah R. or Nina R. He testified generally as to his appropriate behavior around P.F.

¶ 19 On cross-examination, he was asked by the State's counsel about allegations of a prior sexual contact in another city. He denied the allegations and said they were unproven. The State did not offer any evidence of charges and disposition and Father's counsel did not object to the line of questioning.

¶ 20 A similar line of cross-examination, also without objection, was conducted by the State to Mother. In addition, the State, again without objection, sought to impeach Mother's statements by reference to purported inconsistent statements in a police report. Neither testimony from the police officer nor the report were presented.

 ¶ 21 The Parents rested and the State announced that it had no rebuttal. Nevertheless, P.F.'s attorney was permitted, without objection from Parents' counsel, to recall the DHS employee, W.V.[7] Initially the rebuttal testimony consisted of a recital of statements made by Mother during a police interview also attended by W.V. According to W.V., Mother told the police that: P.F. did not like Father to tickle her; P.F. was afraid of snakes and had nightmares (a fact previously acknowledged by Parents); P.F. did not want Father in her room when she awoke from nightmares and that she was afraid of Father; and, last, Mother knew about allegations made against Father in the past in another community.

¶ 22 Next, W.V. testified she was present during a police interview of Father. W.V. testified that Father admitted to being in P.F.'s bedroom on occasion to see if she was asleep and to turn off the television. Father acknowledged tickling P.F., as he also acknowledged in his testimony-in-chief. The tenor of the examination changed and W.V. was asked what Father told her in this interview. She testified that he said he had been accused of fondling one time; he denied touching P.F., but might have accidently touched Sarah R.; and, when he was young he had inappropriately touched people, but

Although, there is no indication of a transcript being provided, Parents made no objection on that ground. It appears that a copy of the video was provided well in advance of the trial date.

6. Transcript, p. 105.

7. Rebuttal evidence is that which becomes relevant because of proof introduced by the adverse party. Its purpose is to explain or counter the opponent's proof. *State ex. rel. Oklahoma Bar Ass'n v. Busch*, 1998 OK 103, ¶ 15, 976 P.2d 38, 45. Because of the absence of objection, this Court will not address whether a party who does not present evidence may nevertheless, as here, offer rebuttal. Testimony whose purpose is to contradict an expected and anticipated portion of the opponent's case-in-chief is not rebuttal. *Id.* A plaintiff has the duty to present all of his or her evidence to make out the case-in-chief before resting, and it is not permissible to permit the plaintiff to introduce a portion of the evidence in chief and then to wait to see what the evidence on the part of the defendant is before introducing the rest of his evidence. This Court notes that a portion of the "rebuttal" consisted of reiteration of the information used by the State on cross-examination for impeachment and a portion dealt with the unproven allegations against Father regarding events at another time and community.

that he did not do so now because he is a Christian.

¶ 23 Cross-examination by Parents' counsel established that W.V. attempted to ascertain the circumstances of the allegation of fondling occurring in another city but found no record of any charge. She conceded that there was nothing wrong about Father being in P.F.'s room to turn off a television or to check on her. The State did not examine the witness further.

¶ 24 At the close of argument, the trial court ruled and entered judgment that the State had met its burden of proof and found by a preponderance of the evidence that P.F. would be adjudicated deprived as to both Parents. Parents appeal.

## STANDARD OF REVIEW

■ ¶ 25 In discussing the legislature's intention, the appellate courts have held deprived child hearings are civil in nature. *See In re H.J.*, 1993 OK CIV APP 72, ¶ 14, 854 P.2d 381, 383, (Rapp, P.J. concurring); *see also, In re K.W.*, 2000 OK CIV APP 84, ¶ 7, 10 P.3d 244, 245–46 (treating a deprived child hearing as a civil case). The goals of the juvenile court proceeding are to correct parental behavior and protect neglected youngsters. *In re H.J.*, 1993 OK CIV APP 72 at ¶ 14, 854 P.2d at 383. Furthermore, appeals from district court decisions in deprived child hearings are handled as civil appeals rather than criminal appeals. 10 O.S.2001, § 7003–6.4(A).

■ ¶ 26 *At this stage of the proceeding wherein the deprived status of the child is the only ultimate issue,* the burden of proof upon the State is to demonstrate the basis for that adjudication by a preponderance of the evidence. *See In re G.G.,* 2004 OK CIV APP 71, ¶ 15, 97 P.3d 1155, 1160. The statute, 10 O.S.2001, § 7003–4.5(A), provides:

> If the court finds that the allegations of a petition alleging a child to be deprived are supported by the evidence, and finds that it is in the best interests of the child and the public that the child be made a ward of the court, the court shall sustain the petition, and shall make an order of adjudication finding the child to be deprived and

shall adjudge the child as a ward of the court.

■ ¶ 27 Therefore, this Court will "thoroughly review the record in light of the requirements and affirm the trial court's ruling if it is not contrary to the clear weight of the evidence." *In re C.T.,* 1999 OK CIV APP 55, ¶ 6, 983 P.2d 523, 525. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100 n. 1.

■ ¶ 28 In an appropriate case, this Court will consider and determine whether there has been fundamental error. Fundamental errors are those which go to the foundation of the case, or which take from the defendant a right which was essential to his defense, and which will be considered regardless of whether procedurally preserved. *Stowe v. State,* 1964 OK CR 123, 397 P.2d 693.

## ANALYSIS AND REVIEW

### A. Hearsay And Failure to Have P.F. Testify

#### 1. Hearsay Not Constituting Reversible Error

■ ¶ 29 W.V. was permitted to relate hearsay statements from Nina R. and Sarah R., both over the age of thirteen, implicating Father in inappropriate acts either with them or with P.F. Section 7003–4.2 of Title 10 does not apply because of the age of the declarants and the fact that this proceeding did not affect either of them. Standing alone, this error would not constitute reversible error as both declarants subsequently testified in the trial.

#### 2. Hearsay Statements Made to DHS' W.V.

■ ¶ 30 W.V. was permitted to testify as to hearsay statements made to her during her initial interview with P.F., and before the DVD recorded interview was made. At this stage, and as to these hearsay statements, 12 O.S. Supp.2004, § 2803.1, is the governing

statute.[8] There was no reliability and trustworthiness hearing and no determination of whether the child was available to testify, all of which findings were a necessary predicate to admission of the hearsay statements.

¶ 31 The concern at this point is whether the out-of-court statements by the child are admissible. The trial court must ascertain whether the child is "available" to testify at trial *and* when the out-of-court statements were made. Moreover, the inquiry into "availability" at two points in time, at trial and when the out-of-court statements were made, serves separate and distinct purposes because the important concern is the availability of the testimony.

¶ 32 The concept of competency overlaps with the matter of physical presence. There is a dual aspect of the process. Thus, the question is not only "availability" at time of trial but also "availability" at the time the out-of-court utterances were given. *In re A.D.B. and C.B.,* 1989 OK CIV APP 55, 778 P.2d 945. It would be, and is, a mistake to equate "availability" of a witness to testify at the trial with "competency" of a witness at the time of the making of the out-of-court statements.

¶ 33 At this time in the proceedings, the focus is upon the availability of the testimony as opposed to the physical presence of the child, so before the testimony becomes "available," it must meet the trustworthiness test. *In re A.S.,* 1989 OK CIV APP 91, ¶ 9, 790 P.2d 539, 542, and *In re A.D.B. and C.B.,* 1989 OK CIV APP 55, 778 P.2d at 948.[9]

¶ 34 The statute, 12 O.S.2001, § 2804, defines when a child is unavailable.[10] At the

---

**8.** The statute reads:

A. A statement made by a child who has not attained thirteen (13) years of age or a person who is an incapacitated person as such term is defined by the provisions of Section 10–103 of Title 43A of the Oklahoma Statutes, which describes any act of physical abuse against the child or incapacitated person or any act of sexual contact performed with or on the child or incapacitated person by another, is admissible in criminal and juvenile proceedings in the courts in this state if:
1. The court finds, in a hearing conducted outside the presence of the jury, that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy. In determining such trustworthiness, the court may consider, among other things, the following factors: the spontaneity and consistent repetition of the statement, the mental state of the declarant, whether the terminology used is unexpected of a child of similar age or of an incapacitated person, and whether a lack of motive to fabricate exists; and
2. The child or incapacitated person either:
a. testifies or is available to testify at the proceedings in open court or through an alternative method pursuant to the provisions of the Uniform Child Witness Testimony by Alternative Methods Act or Section 2611.2 of Title 12 of the Oklahoma Statutes, or
b. is unavailable as defined in Section 2804 of this title as a witness. When the child or incapacitated person is unavailable, such statement may be admitted only if there is corroborative evidence of the act.
B. A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at least ten (10) days in advance of the proceedings to provide the adverse party with an opportunity to prepare to answer the statement.
Part B is not in issue here.

**9.** Section 2803.1 is codified in the Evidence Code in Article VIII Hearsay. It does not make admission of the hearsay statements depend solely upon availability to testify *at trial.* Availability, or unavailability to testify at trial has a separate legal significance in that unavailability at trial adds a further requirement of corroboration of the act before the hearsay can be admitted.

**10.** Section 2804(A) is the part applicable here and provides in part:

"Unavailability as a witness," as used in this section, includes the situation in which the declarant:
1. Is exempt by ruling of the court on the ground of privilege from testifying concerning the subject matter or of the declarant's statement;
2. Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;
3. Testifies to a lack of memory of the subject matter of the declarant's statement;
4. Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
5. Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance or, in the case of a hearsay exception under paragraphs 2, 3 or 4 of subsection B of this section, the declarant's attendance or testimony, by process or other reasonable means.

close of the hearing to determine trustworthiness, a trial court must find whether the child was available to testify in court. Second, the trial court must find whether the child was a competent witness when the out-of-court statements were made, considering among other factors the presumption that a child is a competent witness.[11] These two rulings involve distinct purposes and consequences.

¶ 35 This Court finds the rationale of *A.D.B.* to be persuasive. The reason for the competency-at-the-time-of-utterance determination is that the issue concerns the availability of the testimony from the child rather than the child's mere physical availability. *In re A.S.*, 1989 OK CIV APP 91 at ¶ 9, 790 P.2d at 542. Moreover, as noted in the concurring views in *A.D.B.*, a purpose for the determination is to incorporate this factor into and as one of the indicia of reliability. Even though the Legislature has provided factors to consider in a reliability hearing, the Legislature has not limited the factors for the trial court's consideration to those set out in the statute in deciding whether the child's statements are reliable. On the contrary, the statute directs that the "court may consider, *among other things*" the listed factors. 12 O.S.2001 § 2803.1(A)(1). Thus, this Court also holds that the trial court has the duty to determine whether the child, here P.F., was a competent witness when she made the statements to W.V. in the initial interview with W.V., prior to the DVD recording. This task is aided by the statutory

rebuttable presumption of competency to testify, however, other factors need to be considered here in that it is undisputed that P.F. has a low IQ and is in special education. The trial court did not make this determination and apparently did not even consider the competency issue.

### 3. Hearsay And Use of DVD

 ¶ 36 W.V. was permitted to offer hearsay evidence as to P.F.'s statements contained in the DVD interview. However, the DVD became an exhibit without the Parents' objection and, had this not been the case, the foregoing analysis would apply equally to this hearsay testimony. The question now is, however, whether that DVD was properly considered by the trial court. This Court rules that the trial court erred in considering the DVD for the following reasons.

¶ 37 Initially, the statute for consideration is 10 O.S.2001, § 7003–4.2.[12] The DVD fails to qualify for admission into evidence under this statute on several grounds.[13]

¶ 38 First, Subsection B(1) imposes upon the trial court an affirmative duty to make a specific finding of reliability, according to a general set of criteria. This reliability determination is akin to the trustworthiness determination for admission of out-of-court statements under 12 O.S. Supp.2004, § 2803.1, wherein virtually the same language is used. Therefore, this Court holds that competency of the child witness, as discussed above, is an element of "reliability" under Section 2803.1.

11. Everyone is competent to testify unless excluded by the Evidence Code. 12 O.S.2001, § 2601.

12. The fact that P.F.'s recorded interview was played has no bearing on the admissibility of W.V.'s hearsay testimony concerning the pre-DVD interview she had with P.F. The existence of the DVD and the role of Section 7003–4.2, if any, relates to P.F.'s "availability at time of trial." *See* note 8.

13. When Section 7003–4.2 is utilized, the effect is to present the testimony of the child by an alternative means and thus the Parents in this case are not confronted by a witness against them. This Court notes, for historical purposes, its recent decision in the case of *In re A.A.*, case number 99,183 (November 23, 2004), (Stubblefield, J., concurring, certiorari denied and withdrawn from publication by order of the Okla-

homa Supreme Court). There, the case involved termination of parental rights and the absence of the child as an in-court witness. This Court ruled that hearsay testimony of the child's out-of-court statements was inadmissible and found support for the ruling in the case of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford,* the Supreme Court departed from the previous "adequate indicia of reliability" admissibility standard for hearsay, emphasizing instead the dictates of the Sixth Amendment guarantee of confrontation of witnesses in criminal or quasi-criminal cases. Due to the outcome reached here, it is unnecessary to reach the constitutional question broached by this circumstance or to decide whether a deprivation hearing is sufficiently distinguishable from a termination hearing such that *Crawford* would not apply.

Moreover, this finding must be set out in the record so that the record may be the subject of a meaningful review, and that is not the case here. Under the record presented, a meaningful review is not possible.

¶ 39 Second, the DVD was not authenticated as required by Section 7003–4.2(B)(4). Third, W.V., in her testimony, indicated that she was present for the whole interview. However, she is not identified on the DVD as being present for the whole interview as required by Section 7003–4.2(B)(6). Further, the voices on the recording are not clearly identified.

¶ 40 Last, the substitute, and supposedly qualified, interviewer was not present at trial and available for cross-examination. Moreover, the record wholly fails to demonstrate any qualifications by any interviewer and W.V. testified that she was not qualified for this purpose.[14] It is self-evident that conduct of the interview of a child by a qualified interviewer is designed to avoid having the statement refused because of Section 7003–4.2(B)(5). Here, review of that portion of the interview conducted by W.V. demonstrates a clear violation of the requirements of Section 7003–4.2(B)(5).

■■■ ¶ 41 Next, this Court rules that 10 O.S.2001, § 7003–4.2, must be construed in conjunction with the Uniform Child Witness Testimony Act (UCWT), 12 O.S. Supp.2004, §§ 2611.3–2611.11.[15] The UCWT is the later expression of the Legislature and to the extent that both statutes relate to testimonial evidence presented to prove the State's case-in-chief, the UCWT has imposed additional requirements and procedures.[16]

¶ 42 There are some significant differences between the UCWT and Section 7003–4.2, the more important of which here are the provisions in the UCWT that protect the rights to have counsel present and to fully examine and cross-examine. To the extent that these statutory provisions conflict, the UCWT prevails under the general rule that it is the latter legislative expression, *Duncan v. Oklahoma Dept. of Corrections*, 2004 OK 58, ¶ 18, 95 P.3d 1076, 1083, as well as because it avoids the need to consider *Crawford's* confrontation requirement.[17]

¶ 43 In the present case, there has not been compliance with the UCWT. Therefore, this Court holds that when, as here, the State seeks to use the recorded statement of a child for the purposes of testimony to establish its case-in-chief, then the recording of the testimony must conform to the UCWT. This has not occurred.[18]

### B. Impeachment and Rebuttal.

¶ 44 Questions were asked at trial concerning an unproved allegation against Father pertaining to an alleged inappropriate touching occurring at some other time and in another community. The State had given a notice of intent to elicit evidence of other crimes, but such notice did not include this event. *See Burks v. State*, 1979 OK CR 10, 594 P.2d 771.[19] In this instance, however, the questions would not meet a *Burks* test because the allegations were not established as proven crimes by any standard of proof.

---

14. Moreover, W.V. cast doubt on the qualifications of the substitute interviewer by her statements to the effect that that person relinquished control over the interview to W.V. because she, the substitute, had not done this very much and did not know what questions to ask.

15. 10 O.S.2001, § 7003–4.3 also falls in this category.

16. P.F.'s statements that were elicited in the recorded interview are testimonial statements. Testimonial evidence relates to a factual assertion or discloses information. *City of Seattle Washington v. Stalsbroten*, 138 Wash.2d 227, 978 P.2d 1059, 1062 (1999). The State used P.F.'s statements for the purpose of proving the State's case. *See Crawford*, 541 U.S. at 51, 124 S.Ct. at 1364, defining testimony as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."

17. See n. 13.

18. Parents asked that P.F. be made available, but the Court erroneously denied the request for the reasons stated in this Opinion. This Court does not decide whether making the child available in Court post-DVD would cure any non-compliance with the UCWT.

19. Overruled on other grounds, *Jones v. State*, 1989 OK CR 7, 772 P.2d 922, in turn overruled on other grounds, *Omalza v. State*, 1995 OK CR 80, 911 P.2d 286.

Moreover, the subject matter did not even rise to the level of a criminal charge—but that too would not render the evidence admissible. *Laughlin v. Lamar,* 1951 OK 330, 237 P.2d 1015 syl. 1. In short, the State offered such testimony when it should have known that it was at best prejudicial and at worst an evidentiary harpoon.

¶ 45 Counsel for P.F. was permitted to offer rebuttal evidence even though counsel did not offer any evidence on behalf of the child nor did the evidence offered qualify as rebuttal. The subject matter of W.V.'s testimony in rebuttal was to impeach the Parents' testimony given directly or on cross-examination. Rebuttal evidence is that which becomes relevant because of proof introduced by the adverse party.[20] A proper predicate must be laid in order to introduce rebuttal impeaching testimony. *Crussel v. Kirk,* 1995 OK 41, ¶¶ 8–9, 894 P.2d 1116, 1118–19. Thus, for example, the questioner should inquire whether the witness made statement "ABC," assuming it to be one that would impeach the witness. If the witness admits making the statement, then the point is made. If the witness denies making the statement, then the predicate is laid for rebuttal. Here, Counsel for P.F. assumed the role of the State, but failed to lay a proper predicate. However, because Parents' counsel did not preserve this error for appellate review the circumstance is noted so as to prevent recurrence in the new trial ordered by this Court.

## CONCLUSION

¶ 46 The trial court judgment must be reversed. In doing so, this Court bears in mind that this is a deprived child action with its focus on the protection of the child, as well as that the burden of proof required *at this stage* to establish that a child should be adjudicated as deprived is the preponderance of the evidence test. Nevertheless, the Constitution recognizes rights which, as here, may result in a conflict with the natural tendency to favor finding for protection of a child.

20. *See* n. 7.

¶ 47 Examination of the record reveals that counsel for Parents did not preserve error in each instance by timely objection or other procedure. Nevertheless, the crux of the issue, confrontation and the reliability and trustworthiness of out-of-court statements by P.F., was before the trial court. The trial court should have observed and protected the parties' fundamental constitutional rights, but it wholly failed to do thereby causing fundamental error to be introduced into the proceedings.

¶ 48 For the reasons stated herein, this matter must be reversed and remanded for a new trial. However, the order placing custody with DHS is not disturbed.

¶ 49 REVERSED AND REMANDED FOR A NEW TRIAL.

GOODMAN, P.J., and STUBBLEFIELD, J., concur.