2012 OK CIV APP 49

**In the Matter of H.T., an Alleged Deprived Child,**

**Huyen Ai Thi Cleveland and Christopher D'Shun Cleveland, Appellants,**

v.

**State of Oklahoma, Appellee.**

**No. 107,367.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 9, 2011.

Rehearing Denied Jan. 24, 2012.

Certiorari Dismissed April 16, 2012.

Rhonda G. Telford Naidu, Oklahoma City, Oklahoma, for Appellant Father.

Sherry J. Neal, Oklahoma City, Oklahoma, for Appellant Mother.

William R. McKinney and John Joseph Dewey, Oklahoma City, Oklahoma, for Appellee.

LARRY JOPLIN, Judge.

¶1 Appellants, Christopher and Huyen Cleveland (parents/father/mother), appeal the trial court's June 26, 2009 orders terminating their parental rights pursuant to 10 O.S.2001 § 7006–1.1(A)(6), which determined H.T. was a deprived child due to the parents' failure to correct the conditions which led to the termination of their parental rights to H.T.'s four oldest siblings.[1]

¶2 Mother asserts the verdict which found H.T. deprived and terminated the parental rights of both parents is not supported by sufficient evidence; the court erred in failing to sustain Mother's motion to sever the jury trial from Father's proceedings; and the court permitted improper comment regarding Mother's exercise of her fifth amendment right to remain silent when she was questioned by Appellee's counsel during the proceedings.

¶3 Father similarly asserts there is insufficient evidence to find H.T. deprived and insufficient evidence to support the verdict terminating his parental rights; termination

---

1. H.T. has a fifth older sibling, L.C.T., who was the subject of a 2006 deprived petition and a 2008 jury verdict and resulting appeal, which found L.C.T. to be a deprived child and terminated the parental rights of Appellants with respect to L.C.T. However, this case was on appeal when H.T.'s June 2009 trial began. As a result, the trial court required the State to confine its § 7006–1.1(A)(1) case to failure to correct conditions relating to the deprived status of the four oldest siblings of H.T., with possible reference to the L.C.T. matter for impeachment purposes only, to be evaluated by the trial court if impeachment became relevant in the H.T. proceedings.

of his parental rights is not in the child's best interests; Father's request for pretrial transcripts at the state's expense was improperly denied; Appellee's counsel should not have been permitted to comment on Father's exercise of his fifth amendment right to remain silent; and the court should not have permitted the attorney for the children to read transcripts of previous testimony to the jury in lieu of having the children testify at these proceedings.[2] Having reviewed record, we affirm.

¶4 In 2001, H.T.'s older siblings, T.T. and M.T., were removed from Mother's home upon allegations of physical abuse. The children were returned and the case was dismissed after Mother agreed to treatment, counseling and voluntary services. In 2003, the children were again removed from the home upon allegations of physical abuse. As a result, four children (T.T., M.T., C.C. & T.C.)[3] were adjudicated deprived in July 2004. The parents, Appellants, were given individual service plans in order to correct the circumstances that led to the deprived adjudication of the four children and they received deferred sentences as a result of plea agreements arising from the criminal charges of abuse.

¶5 In May 2005, the state initiated a petition to terminate parental rights with respect to T.T., M.T., C.C., & T.C., due to the alleged failure of parents to correct the circumstances that led to the children being adjudged deprived in 2004. The matter was tried to a jury in April 2006. The jury determined the children were deprived, conditions were not remedied and parental rights of Appellants were terminated in 2006.

¶6 The jury trial regarding the deprived status and termination of rights with respect to H.T. was had from June 15 through 24, 2009. The present case regarding H.T. is based upon the previous adjudications of the first four children and parents' continued failure to correct deprived conditions.

■ ¶7 A termination of parental rights case must be supported by clear and convincing evidence. *In re S.B.C.*, 2002 OK 83, 64 P.3d 1080. To affirm the trial court's findings, the appellate court's review must demonstrate the presence of clear and convincing evidence to support the first instance decision. *Id.* at 1082.

■ ¶8 Both parents assert there is insufficient evidence to support a deprived determination regarding H.T. and therefore no basis upon which to terminate their parental rights with respect to this child. The parents repeatedly argue the allegations of abuse are old, dating to 2003, and do not involve H.T., but instead involve other children who are no longer under the parents' care.

¶9 Oklahoma's children's code provides:

A. A court shall not terminate the rights of a parent to a child unless:

1. The child has been adjudicated to be deprived either prior to or concurrently with a proceeding to terminate parental rights; and

2. Termination of parental rights is in the best interests of the child.

B. The court may terminate the rights of a parent to a child based upon the following legal grounds:

. . .

6. A finding that:

a. the rights of the parent to another child have been terminated, and

b. the conditions that led to the prior termination of parental rights have not been corrected[.][4]

---

**2.** Father filed a post trial "notice." By order of April 2, 2010, the Oklahoma Supreme Court ruled that "consideration of any issues raised in that Notice is deferred to the decisional stage of appeal." We note for the record his appointed counsel has not filed a notice of withdrawal and to the extent the notice can be treated as a motion, such motion is denied.

**3.** T.T. and M.T. are the biological children of Huyen Cleveland, to which Christopher Cleveland was the step-father at the time. C.C. and

T.C. are the biological children of both Huyen and Christopher Cleveland.

**4.** The state's termination case was based upon 10 O.S.2001 § 7006–1.1(A)(6), which was renumbered, 10A O.S. Supp.2009 § 1–4–904(B)(6), and reads as indicated above. 10 O.S.2001 § 7006–1.1(A)(6) reads as follows:

A. Pursuant to the provisions of the Oklahoma Children's Code, the finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the

It is due to the deprived status and termination of rights with respect to the four oldest children that the state sought the deprived adjudication and termination in H.T.'s case, claiming the conditions had not been corrected.

¶ 10 The record below contains clear and convincing evidence that parents did not correct the conditions which led to the termination of their parental rights to their four oldest children. Neither one of the parents has completed the required counseling, anger management, parenting classes or compassion workshops that might have helped them deal with their parenting responsibilities. It is especially troubling that both parents deny any need to engage in the training which D.H.S. once sought to provide. Mother testified she did not see a need to repeat courses she had already taken. Mother repeatedly argued that she had completed the courses, but the record does not bear this out. And Father admitted he learned a number of things in the few classes he took, but did not complete any of the courses, nor did he have plans to do so.

¶ 11 Mother quit her counseling after having requested at least two changes in counselors. The supervising counselor indicated Mother was not empathetic to her children, had not internalized the counseling and had not corrected the issues that the counseling center was attempting to address with her. There is nothing in this record to indicate that has changed. In addition, Mother was not particularly forthcoming or specific about the counseling she received with her pastor and did not provide a requested release so that D.H.S. personnel could evaluate the services she received within her church. At trial, Mother denied domestic violence was an issue within her home, despite having stipulated to the fact her four oldest children were deprived, listing domestic violence as one of the many factors of deprivation. This denial or disconnect with respect to Mother is evidence that the conditions alleged by the

state exist currently, and continue to be unacknowledged and uncorrected conditions within the parents' home and not simply old, irrelevant allegations from 2003.

¶ 12 Particularly troubling with respect to Mother's care is that she originally denied Father's abuse of the children in 2003, admitting it later, only after the criminal charges had been disposed of. She has also failed to acknowledge responsibility for abuse perpetrated by Father, saying she was not there and was not responsible for those injuries. Throughout the first deprived and corresponding termination proceeding, Mother demonstrated a lack of understanding of her duty to protect the children from Christopher Cleveland's abuse, seeming to believe she owed no duty to protect the children if Christopher Cleveland abused them outside her presence. This mind-set was evident in her testimony during H.T.'s proceeding as well.

¶ 13 The record was devoid of evidence Father completed or attempted to complete any of his parenting courses or abuse counseling. He too did not provide a release to have his church counseling examined and evaluated. Father also attempted to minimize the injuries sustained by T.T. and M.T. in 2003. He testified that he was able to draw appropriate boundaries with respect to discipline, but children with light complexions, such as M.T. and T.T., would bruise or sustain some kind of injury or pain even if you were to "barely tap them." One D.H.S. official with years of experience and knowledge of the specific injuries sustained by both T.T. and M.T. said the deep tissue bruising the girls were subjected to was among the worst the official had ever seen. Father's testimony demonstrates an ongoing lack of regard for the abuse his step-daughters endured and a complete failure to realize his glaring need for parental instruction.

¶ 14 The classes, counseling and home observations prescribed by D.H.S. were origi-

---

child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations; provided, however, the paramount consideration in proceedings concerning termination of parental rights shall be the health, safety or welfare and best interests of the child:

6. A finding that a subsequent child has been born to a parent whose parental rights to any other child has been terminated by the court; provided, that the applicant shall show that the condition which led to the making of the finding which resulted in the termination of such parent's parental rights to the other child has not been corrected[.]

nally intended to address these systemic issues and allow parents to raise the children in a safe and secure environment.[5] But the evidence showed both parents took a very careless and lax approach to improving their parenting skills and the conditions to which their children were subject. In addition to this lack of effort, parents have been affirmatively uncooperative and less than forthcoming.[6]

■ ¶ 15 Their conduct has been insufficient and remains insufficient. The law does not require the State to prove another one of their children has been abused in order to support its claim under 10 O.S.2001 § 7006-1.1(A)(6). *In the Matter of R.J.W.*, 1990 OK 23, 789 P.2d 233, 234. Therefore, a lack of evidence that H.T. herself was not physically harmed like her older siblings, is not itself demonstrative of corrected conditions. These parents were on notice that their parenting was inadequate; they were provided with programs and tools to help them achieve a level of adequacy; and they did not pursue those tools or programs with any level of conviction or tenacity that a parent striving to keep their child might.

■ ¶ 16 Mother next argues that denial of her motion to proceed in a trial separate from Father marked reversible error. Father represented himself *pro se* at trial, a fact Mother claims reflected badly on her own defense. In support of her proposition,

Mother cites *Lafevers v. State*, 1991 OK CR 97, 819 P.2d 1362. *Lafevers* is a criminal case. The termination of parental rights, while similar in some ways to a criminal proceeding, is civil in nature. *In the Matter of L.C.*, 1998 OK CIV APP 96, ¶ 5, 962 P.2d 29, 31; *In the Matter of P.F.*, 2005 OK CIV APP 50, 118 P.3d 224. Mother did not cite any authority requiring the court to sever civil proceedings such as these. In addition, she did not provide anything more than a general statement that Father's inept representation was problematic for her, citing no specific examples of prejudice. Further, she did not indicate she and Father were separate parenting entities, as she was still married to Christopher Cleveland and was pregnant with a seventh child at the time of H.T.'s termination of parental rights trial. We can find no basis for relief with respect to this proposition of error.

■ ¶ 17 Mother and Father both allege error with respect to the state's closing argument commentary about their exercise of the fifth amendment right not to incriminate themselves, wherein they refused to answer questions about things such as H.T.'s parentage and her birth certificate. While both parents had the right to invoke the privilege, allowing comment on the exercise of the privilege in a civil proceeding is not prohibited. *In the Matter of C.C.*, 1995 OK CIV APP 127, 907 P.2d 241, 244.[7] We find no basis for relief in this proposition of error.

---

5. The State sought H.T.'s deprived adjudication immediately, without offering counseling or reunification options. D.H.S. personnel testified that this was due to the complete lack of progress that had been realized in the proceeding two cases.

6. Appellants have been accused of perjuring themselves with respect to withholding information from state authorities about H.T., including denying under oath that Huyen Cleveland was pregnant, refusing to answer the door when police and D.H.S. authorities came to the apartment to pick up the child pursuant to a D.H.S. pick up order, then hiding in a closet with the baby and refusing to identify the baby, the baby's physician or admit their own parentage when the child was being taken into D.H.S. custody. Then during the trial itself, Appellants asserted their fifth amendment right and refused to answer simple questions, such as "Who is [H.T.]?", to which Mother responded, "I plead the Fifth." "Was [H.T.] borth on June 3rd, 2008?"; to which Mother responded, "I plead the Fifth to that,

too." Father similarly used his fifth amendment right to decline answering questions such as "... how many children do you have?"

7. The court, *In the Matter of C.C.*, 907 P.2d at 244, stated:

It is therefore clear, since this is not a criminal proceeding, that the summoning of Rick to the stand to invoke his privilege against self-incrimination did not violate his constitutional rights.

With regard to the allegation that comment by the prosecution on defendant's refusal to testify is a violation of the fifth amendment's privilege against self-incrimination, Rick cites *Kaneshiro v. Belisario*, 51 Haw. 649, 466 P.2d 452, 455 (1970). In *Kaneshiro*, the court held that a defendant's assertion of the privilege against self-incrimination in a paternity proceeding is protected by the state and federal constitutions and may not be the subject of any comment or adverse inference by the opposing party.

A later decision by the same court, however, held the opposing view that "the Fifth Amend-

¶ 18 Father alleges he was improperly denied pretrial transcripts at the state's expense. At pretrial conference, Father requested the complete transcripts of hearings held on November 10, 2008 and November 14, 2008. The trial court determined the transcriptions were more appropriate for appeal purposes, and instead ordered Father be provided the transcription of only the witness testimony during those two days of hearings. Father indicated to the court that his need for the transcriptions was to evaluate the witness testimony and prepare his cross-examination at trial. In response to this ruling, Father asked if he would have the witness testimony before the witnesses were called at trial, to which the court indicated he would. Father then said "Okay, that's fine." Father did not articulate in his appeal brief how he was prejudiced, making nothing more than a general comment that he was entitled to the information and did not receive it.

> The burden is on the defendant appealing from a judgment on a jury's verdict for the plaintiff, to show the trial court's alleged errors complained of by the defendant were prejudicial to him and that the verdict would probably have been different had such errors not occurred.

*RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.,* 1989 OK CIV APP 100, 813 P.2d 1, 9. Father specifically mentions in his appellate brief that Mother's counsel was provided all this information he claims was denied him. However, Mother, with the full transcript in hand and ably represented by counsel, was no more successful than Father representing himself *pro se.* Father has failed to demonstrate how he would have garnered a different result had the full transcripts been provided, particularly in light of the fact the court provided Father with the witness testimony. This proposition of error provides no basis for relief.

¶ 19 Father's final proposition of error alleges that it was improper for the state to present the witness testimony of Appellants' children, T.T. and M.T., through the reading of transcripts from the previous 2006 trial. Father claims this practice was a violation of his sixth amendment right to confront his accusers. However, "the Sixth Amendment's right of confrontation applies only to criminal cases, not to civil trials." *In re K.N.L.,* 2007 OK CIV APP 22, 154 P.3d 1276 (citing *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Kiddie v. Kiddie,* 1977 OK 69, 563 P.2d 139;9; and *In re A.M.,* 2000 OK 82, ¶ 9 n. 7, 13 P.3d 484, 487 n. 7).

¶ 20 It may also be noted that T.T. and M.T. testified at two previous trials, once in 2006 and again in 2008. During both trials, Father's counsel confronted and cross examined both girls about the exact same issues of abuse raised in H.T.'s termination of parental rights trial.[8] In addition, Father entered

---

ment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil case.' " (Citations omitted). *Kaneshiro* is further distinguished because it was not a deprived/termination proceeding.

Moreover, "[f]ailure of a party who is present at the trial to answer questions based on the privilege against self-incrimination raises a strong inference that the answers would have been unfavorable and damaging to him, and comment to that effect is proper." (Citation omitted).

Thus, the state's comment on Rick's silence did not render the proceeding unfair or deprive him of his constitutional rights.

8. Even in criminal cases where the accused was accorded a sixth amendment right to confront his accuser, admission of former testimony from a previous trial on the same issue, wherein the accused had an opportunity to cross-examine the witness, the court found use of this former testimony did not violate defendant's six amendment rights. *Miles v. State,* 1954 OK CR 33, 268 P.2d 290, 298 (citation omitted):

> It will be observed, however, that this constitutional provision in the various states and in this state does not require that the accused shall be confronted with the witnesses against him upon a pending trial on the indictment or information. So it is generally held that the requirement is satisfied if the accused has been once confronted by the witnesses against him in any stage of the proceedings upon the same accusation and has had an opportunity of cross-examination by himself or by counsel. It is under this view of the constitutional provision that the testimony of a witness given in a former trial or upon a preliminary in the same case is admitted in evidence. Both the constitutional and statutory requirements are complied with when a defendant has had the opportunity to cross-examine the witnesses in a preliminary trial before a justice of the peace or upon a former trial upon the same issue.

into a plea agreement, wherein he pleaded to criminal charges of child abuse perpetrated against T.T. and M.T., which makes his present claims that he somehow needed to impeach the children's testimony years later with respect to the degree of abuse they endured a hollow argument at best. Ultimately, we can find no basis for relief in Father's proposition of error because the sixth amendment right he claims is not available to him in these civil proceedings.

¶ 21 The orders of the trial court finding H.T. to be a deprived child and terminating the parental rights of Mother and Father with respect to H.T. are AFFIRMED.

MITCHELL, P.J., and BUETTNER, J., concur.